ROBERTS, J.,
for the Court:
¶ 1. On May 28, 2010, the South Panola School District (District) issued Benjamin Webb notice that his contract as a special-education teacher for the 2010-2011 school year would not be renewed. Webb timely requested a hearing before the South Pa-nola School Board (Board) on the non-renewal of his contract. Subsequently, Webb received a letter on June 24, 2010, terminating his employment and providing the grounds of his termination. The Board, through a hearing officer, held the hearing on July 26, 2010. It issued an order finding that there was substantial credible evidence to support the District’s decision to terminate Webb. Webb appealed this decision to the Panola County Chancery Court, and on July 18, 2011, the chancery court affirmed the District’s decision to terminate Webb. Webb now appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. Webb was employed as a special-education teacher at the District’s alternative school for approximately nine years. On May 18, 2010, Webb received notice from Dr. Keith Shaffer, the District’s superintendent, that his contract had been renewed for the 2010-2011 school year; however, ten days later, Webb received a letter from Dr. Shaffer stating that Webb’s contract would not be renewed. Then, on June 24, 2010, Webb received another letter from Dr. Shaffer stating that the May 28, 2010 letter of non-renewal was withdrawn and that Webb was terminated under Mississippi Code Annotated section 37-9-59 (Rev.2007). The letter also explained that the reasons for termination were Webb’s “[cjontinued negligence [in] performing adequate classroom instruction,” Webb’s “[f]ailure to complete or maintain IEPs on students[, Webb’s failure to comply with procedural safeguard policies for IEP students,” and his “[fjalsi-fication of documentation involving procedural safeguards.”[1]
¶ 3. Webb requested a hearing before the Board on the issue of his termination, and one was held on July 26, 2010, with a hearing officer presiding. At the hearing, the District presented testimony of several witnesses to support its decision to terminate Webb. Carolyn Black, an independent special-education consultant for the District, testified about her interactions with Webb. She noted that Webb improperly conducted IEP meetings and improperly completed his students’ IEPs. Concerned with Webb’s performance, Black drafted a teacher-improvement plan for Webb with several key deadlines in May 2010. According to Black, Webb failed to meet the first several deadlines even after Mary Bennett, the District’s special-education director, offered to help. Black further elaborated on Webb’s inability to properly draft an IEP, such as his failure to include behavior plans as required or his failure to indicate on the IEP whether an extended school year for the student was necessary. Black also testified that Webb falsified documents in some students’ IEPs regarding prior notice of IEP meetings. She also expressed much concern over Webb setting a student’s progress rate at achieving sixty percent because sixty percent is con *726 sidered failing in the District. Dianne Enis next testified for the District. Enis works as a special-education consultant for the District, focusing primarily on professional and behavioral development. She testified she had worked with Webb to develop a behavioral plan for a student, but Webb did not follow up or implement that behavioral plan. A second plan was developed, but Webb expressed a desire to wait until the following year to implement the plan. According to Enis, waiting to implement the plan would have been a violation of federal regulations. Bennett testified next. Bennett has been the District’s special-education director for thirty-two years. She noted that Webb did not check his school emails and could not use the computer program designed to generate the IEPs. She also testified that she had gone over Webb’s teacher-improvement plan with him step-by-step and that he missed key deadlines of the plan despite being offered help two times before the deadlines. Additionally, Bennett stated that Webb lost the District curriculum and never sought to replace it. Webb also made decisions regarding whether students needed an extended school year without consulting with the students’ parents as required. Dr. Keith Shaffer, the District superintendent, was the District’s final witness. Dr. Shaffer was asked why he renewed Webb’s contract for the 2010-2011 school year even though Webb was under a teacher-improvement plan, and he explained, “[w]hen I have 500 contracts, I go through signing them and dating them. I just inadvertently — did not realize that [Webb’s] recommendation had already been placed to the [B]oard and done at that time.” According to Dr. Shaffer, Webb’s future employment was going to be decided after his teacher-improvement plan was completed, and ultimately it was (1) Webb’s lack of progress in implementing the teacher-improvement plan, (2) errors committed in completing IEPs after receiving training several times a year, and (3) the “tromping of the procedural safeguards” of the IEP students that contributed to the final decision to terminate Webb.
¶ 4. After the District closed its case-in-chief, Webb called several witnesses, including himself. Webb disputed a majority of the District’s witnesses’ testimony. For example, he testified that he was not negligent in the classroom and that he used an acceptable curriculum and supplements even though he did not have the District curriculum. He also disagreed with the District’s assertion that he did not comply with the procedural safeguard policies, did not properly develop and complete his students’ IEPs, and did not track the students’ progress toward the IEP objectives. Webb asserted that he was not required to complete behavior plans on all his students if he analyzed them and saw no behavior problems; however, he did acknowledge that there was one behavior plan he did not complete for a student. Webb agreed he did not regularly use his school email or computer, but he never missed any important information or meetings because he received the Information from several other sources, such as word of mouth. Webb claimed he never received a yearly evaluation as required by the District’s handbook; therefore, he was not aware of his shortcomings and was not given a reasonable time to correct the issues. According to Webb, he received all the training information each year, “but [he had not] been nurtured along with evaluations, [and] pros and cons of each [evaluation], as [he] should have been.” In addition to his own testimony, Webb provided the testimony of Patricia Gleeton, the alternative school’s principal; Kathy Todd, an assistant school counselor in the District; and Barbara Webb (Barbara), a *727 job developer for the District. Gleeton testified she had recommended Webb for reemployment because she had not been aware there were any problems with Webb prior to recommending him for renewal. Next, Todd testified she was not aware of any insufficiencies in the manner in which Webb used her testing facilities to determine the grade level of his students. Finally, Barbara testified that she never witnessed anything inappropriate in Webb’s class. Against hearsay objections by the District, Webb also submitted a written statement of Phynillia M. Brown. Brown stated that the reasons for Webb’s termination were not valid “without proper documentation of alleged deficiencies having been pointed out to him in a timely manner.” She further stated that Webb should have been given an evaluation and an opportunity to correct any errors before he was terminated.
¶ 5. The Board issued its order on October 28, 2010, finding that there was substantial credible evidence to support the District’s decision to terminate Webb’s employment. Webb then appealed to the chancery court. After reviewing the transcripts, the file, and the parties’ briefs, the chancery court issued its order on July 18, 2011, affirming the District’s decision to terminate Webb, finding that “the decision to terminate [Webb] was supported by substantial evidence that he incompetently performed his duties as a special education teacher.” Webb filed his notice of appeal on August 15, 2011.
¶ 6. On appeal, Webb raises the following issues:
I. The District has the burden of proof[.]
II. A “Teacher-Improvement Plan” which lasts only sixteen (16) days is arbitrary and capriciousf.]
III. The IDEA “side show[.]”
IV.Whether it was “arbitrary and capricious” for the [District] to ignore its own policy for nine years running by failing to ever give [Webb] an annual performance evaluation^] which would have given him notice of his alleged poor [classroom] performance; by on May 12, 2010, entering into a Teacher[-] Improvement Plan with [Webb] giving him through May 2011 within which to bring his [classroom] performance up to par; by on May 18, 2010, signing and entering into a teaching contract with [Webb] for the 2010-2011 school year; and, then without warning, firing [Webb] on May 28, 2010[,] for poor [classroom] performance^]
STANDARD OF REVIEW
¶ 7. ‘When this Court reviews a decision by a chancery or circuit court concerning an agency action, it applies the same standard of review that the lower courts are bound to follow.” Hinds Cnty. Sch. Dist. Bd. of Trs. v. R.B. ex rel. D.L.B., 10 So.3d 387, 394 (¶ 17) (Miss.2008) (citations omitted). Neither the appellate court nor the chancery court can “substitute its judgment for that of the agency or reweigh the facts of the case.” His Way Homes, Inc. v. Miss. Gaming Comm’n, 733 So.2d 764, 767 (¶ 10) (Miss.1999) (citations omitted).
¶ 8. Under Mississippi Code Annotated section 37-9-113(3)(a)-(c) (Rev.2007), the standard of review for appeal “shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was: (a) [n]ot supported by any substantial evidence; (b) [arbitrary or capricious; or (c) [i]n violation of some statutory or constitutional right of the employee.” Ab *728 sent a finding of one of these three reasons, this Court will not disturb the chancery court’s ruling.
ANALYSIS
I. Burden of Proof
¶ 9. In his first issue, Webb submits that the District’s burden of proof at the hearing was to show by clear and convincing evidence that Webb was incompetent. Webb relies on Molden v. Mississippi State Department of Health, 730 So.2d 29, 37 (¶ 18) (Miss.1998) (citations omitted), for the proposition that “in administrative proceedings against professionals licensed by the state, the disciplinary board or agency is charged to demand clear and convincing evidence of the offense.” However, Webb also states that if Molden is not applicable, then the District’s burden of proof would be a preponderance of the evidence.
¶ 10. Mississippi Rule of Appellate Procedure 28(a)(6) provides that “[t]he argument [section of a brief] shall contain the contentions of [the] appellant with respect to those issues presented, and the reasons for those contentions, with citations to authorities, statutes, and parts of the record relied on.” Webb’s brief is unclear as to any issue with the burden of proof applied at the hearing. He fails to explain if his concern is that an incorrect burden of proof was applied, that he was prejudiced, or that the District failed to meet its burden of proof at the hearing. Notwithstanding Webb’s failure to provide an argument for analysis on the burden-of-proof issue, the Mississippi Supreme Court has held that “[a]t a board hearing on termination, the burden rests on the superintendent to prove by a preponderance of the evidence adequate grounds for dismissal.” Harris v. Canton Separate Pub. Sch. Bd. of Educ., 655 So.2d 898, 902 (Miss.1995) (citing Merchant v. Bd. of Trs. of Pearl Mun. Separate Sch. Dist., 492 So.2d 959, 963 (Miss.1986), Then, “[i]f there is substantial credible evidence un-dergirding the [Board’s] finding of fact, those findings may not be disturbed on appeal.” Id. (citing Noxubee Cnty. Bd. of Educ. v. Givens, 481 So.2d 816, 819 (Miss.1985)). The burden of proof at Webb’s termination hearing was not clear and convincing evidence as he urges, but it was a preponderance of the evidence. Webb does not assert that any other standard was applied at his hearing; therefore, this issue is without merit.
II. Webb’s Termination
¶ 11. The three remaining issues Webb raises on appeal all involve a review of whether the District’s decision to terminate him after giving him a teacher-improvement plan, giving him insufficient time to correct any deficiencies, and sending him a contract-renewal letter was arbitrary and capricious; therefore, we will address these issues in this section.
¶ 12. Mississippi Code Annotated section 37-9-59 provides that the school superintendent may dismiss any licensed employee of the District, i.e., a teacher, “[for incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause[.]” Webb was informed that his termination was based upon his “[c]ontinued negligence of performing adequate classroom instruction; [failure to complete or maintain IEPs on students; [f]ailure to comply with procedural safeguard policies for IEP students; [and falsification of documentation involving procedural safeguards.”
A. Teacher-Improvement Plan
¶ 13. In his second issue, Webb urges that he was entitled to a sufficient period of time for evaluation and to correct *729 any deficiencies before he could be terminated. According to Webb, he was terminated just sixteen days after he entered into a teacher-improvement plan with the District, and this was not an adequate amount of time for him to correct any issues outlined in the teacher-improvement plan. Webb cites to persuasive, nonbinding authority in the form of a school law book and several out-of-state cases to support his contention that before termination, a teacher should be given notice of his deficiencies and a chance to correct these deficiencies. He primarily relies on a citation to Mississippi Code Annotated section 37-18-7(3)(a) (Rev.2007) (repealed 2011) for the proposition that a teacher in need of professional development is entitled to at least two years of evaluation before being terminated.
¶ 14. However, section 37-18-7(3)(a) read as a whole is designed to bring at-risk schools into compliance with federal regulations. South Panola was not an at-risk school as contemplated by the statute, and we decline to extend the statute to the current case entitling Webb to two years of evaluation. It is of note that the language Webb relies upon has since been removed from the statute, effective July 2011. There is no statutory requirement that the District enter into a teacher-improvement plan with Webb and that he be given time to correct any deficiencies. Webb’s termination was based on valid reasons found within section 37-9-59. When terminating an employee, the District is required to provide notice of his termination, reasons for his termination, and a public hearing, all pursuant to Mississippi Code Annotated section 37-9-111 (Rev.2007). Webb received all of those. Webb also claims that the District should be bound by its teacher-improvement plan and give him until May 2011 to correct his deficiencies; however, Webb failed to meet the initial deadlines of the plan. Webb is asking this Court to bind the District to the time frame in teacher-improvement plan when he did not abide by the time frame in it. We find no authority permitting us to do what he suggests.
¶ 15. Because Webb was not entitled to anything more than what is required in section 37-9-59 and section 37-9-111, we find this issue to be without merit, and the decision to terminate Webb was based on substantial evidence, was not arbitrary or capricious, and did not violate his statutory or constitutional rights.
B. IDEA Implementation
¶ 16. In his third issue, Webb claims that he was terminated for his implementation of the policies and procedures of the Individuals with Disabilities Education Act (IDEA) codified at 20 United States Code section 1400. More specifically, Webb submits that the primary evidence presented by the District to support his termination involved a single IEP meeting conducted without the necessary representatives present and without giving the parents prior notice of the meeting. Webb argues that the District did not meet its burden of proof to show that all representatives are required to be at each IEP meeting and that prior notice is required for IEP meetings that either do not change or is a refusal to change “the identification, evaluation, or educational placement of the child.” 20 U.S.C. § 1415(b)(3).
¶ 17. First, we find Webb’s argument on this issue to be procedurally barred under Mississippi Rule of Appellate Procedure 28(a)(6). Webb failed to provide “citations to authorities, statutes, and parts of the record relied on.” M.R.A.P. 28(a)(6). On this issue, Webb cited to what we ascertain to be a book by Peter Wright and Pamela Wright entitled From *730 Emotions to Advocacy:The Special Education Survival Guide; however, this book is not a part of the record before us and is not available for our review. Webb does make a broad citation to the IDEA statute, but only to give a citation for the definition of IEP under 20 United States Code section 1414 and a citation to 20 United States Code section 1415(b)(3) that prior notice of an IEP meeting is required. These citations are insufficient for this Court to properly address Webb’s arguments.
¶ 18. Assuming arguendo that Webb was correct in his above assertions about the single IEP meeting, his argument still fails. In Spradlin v. Board of Trustees of Pascagoula Municipal Separate School District, 515 So.2d 893, 897-98 (Miss.1987) (citing Hattiesburg Municipal Separate School District v. Gates, 461 So.2d 730, 739 (Miss.1984)), the supreme court held “where the record supports one valid and viable reason to dismiss a teacher, that fact cannot be sidestepped, and the [BJoard’s decision will not be disturbed.” The record is clearly sufficient as to several other errors Webb committed to justify his termination. At the hearing, the District provided the testimony of Black, Enis, and Bennett that Webb was not using the District’s curriculum; he could not articulate how the activities he was using aligned to the District’s curriculum’s objectives; and he set inappropriate goals for his students based upon District standards. The District also provided substantial evidence in showing that Webb could not and did not properly draft IEPs for his students. Testimony also showed that Webb was given one-on-one training and still did not provide an acceptable IEP in compliance with federal, state, or District requirements. His IEPs lacked behavioral goals for his students and did not track the progress of his students.
¶ 19. We find that the District’s decision was based on substantial evidence, was not arbitrary or capricious, and did not violate any of Webb’s statutory or constitutional rights. This issue is without merit.
C. Arbitrary and Capricious
¶20. In his last issue, Webb argues that the District’s decision to terminate him was arbitrary and capricious because he never received his annual performance evaluation as described in the District’s handbook, thereby depriving him of notice of his deficiencies and a reasonable time to correct them. He also asserts that the teacher-improvement plan outlined goals through May 2011 entitling him at least until that time to correct any deficiencies. Lastly, he claims that he signed a valid contract renewal, which coupled with his teacher-improvement plan, “in effect, [told] him in no uncertain terms that his performance, although needing improvement!,] was sufficient to warrant his continued employment!.]”
¶ 21. We have already addressed these arguments in this opinion; therefore, we will not address them again. A school district may terminate a teacher pursuant to section 37-9-59 and section 37-9-111. In Simpson v. Holmes County Board of Education, 2 So.3d 799, 804 (¶ 18) (Miss.Ct.App.2009), Henry Simpson was terminated as principal of Williams-Sullivan High School, and he appealed his termination arguing, among other things, that he could not be terminated for events that took place prior to the renewal of his contract. This Court held that “[t]he fact that Simpson had recently been given a contract extension did not deprive the Board of its ‘prerogative to rely on just cause when it exists and terminate an employment contract.’ ” Id. at (¶ 20) (quoting Hoffman v. Bd. of Trs., E. Miss. Junior *731 Coll. 567 So.2d 838, 842 (Miss.1990)). First, Dr. Shaffer testified that Webb’s contract was in a stack of approximately five hundred renewals and that he signed Webb’s inadvertently. Further, even though Webb received a contract renewal, the District could still terminate him at any time for his deficiencies. As we explained above, Webb was not entitled to notice of his deficiencies or time to correct them. Webb committed legitimate errors to justify his termination, and these errors were supported by the testimony of several witnesses. The District’s decision to terminate Webb was not arbitrary and capricious, did not violate Webb’s statutory or constitutional rights, and was based on substantial evidence. As such, this issue is also without merit.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF PANOLA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P JJ., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. IEP stands for an "Individualized Education Program.”