CARLTON, J.,
for the Court:
¶ 1. A1 Carter appeals the decision of the Bolivar County Chancery Court, which affirmed the decision of the Board of Trustees (Board) for the Cleveland School District (“District”), not to renew Carter as an employee of the District. Carter argues that the chancery court (1) erred by deciding that the decision of the Board was supported by substantial evidence; (2) erred in finding that the decision of the Board was not arbitrary and capricious; and (3) correctly found, as a matter of law, the reduction-in-force policy (RIF policy) for the District to be vague and ambiguous, but erred in failing to find that it should be construed to require the District to offer Carter another administrative position based on his qualifications, experience, and length of service.
¶ 2. Finding no error, we affirm.
FACTS
¶ 8. The District employed Carter as personnel director on January 4, 2005. He remained in this position until June 30, 2010.
¶ 4. On May 28, 2010, Carter received a letter of nonrenewal from the District. The letter explained that the Board eliminated the position of personnel director pursuant to the District’s RIF policy. The letter further stated that the Board made its decision following a review of budget constraints faced by the District, as well as a review of Carter’s duties as personnel director. The Board determined that the superintendent could absorb the personnel director’s duties. The Board, in fact, eliminated the entire personnel department.
¶ 5. On July 8, 2010, a hearing before the Board commenced on the nonrenewal of Carter’s contract pursuant to Carter’s request to challenge the decision to eliminate his position. The District’s Chief Financial Officer, J.R. Braswell, testified that the District faced $1.4 million in budget cuts for the coming fiscal year. Bras-well further testified that, through attrition, the District only saved $771,000, making the District some $700,000 short in balancing the budget.
¶ 6. A District trustee, Todd Fuller, testified that the District faced dramatic budget cuts. Fuller testified that the Board directed the superintendent to critique all positions for “support staff’ before recommending the elimination of any instructional positions and to evaluate whether the duties carried out by the support staff could be handled any other way. Fuller stated that in order to compensate for the budget cuts, the Board decided to eliminate the position of personnel director and also the position of associate superintendent. Fuller testified that the Board inquired as to whether the superintendent possessed the ability to handle the job duties of the personnel director, and she indicated that she did. Fuller explained that by eliminating the personnel department, the District saved $150,000 per year. Fuller further stated that the Board did *675 not consider whether Carter possessed more experience than other employees or whether Carter should be entitled to replace other employees in the District. Fuller explained that Carter acted as the only personnel director for the District, and “there wasn’t anybody else to compare him to.”
¶ 7. The District’s superintendent, Dr. Jacquelyn Thigpen, testified that the Board requested that she look to eliminate positions at the central office prior to any elimination of instructional positions. While Dr. Thigpen did not recommend eliminating Carter’s personnel-director position, the Board instructed her, because of the budget shortfalls and after reviewing the duties of the personnel director, to eliminate the entire personnel department. Dr. Thigpen testified that the Board eliminated the personnel department by utilizing the RIF policy. Dr. Thigpen also testified that when the Board asked her whether the personnel director’s duties could be distributed to others, she replied that a distribution of those duties will occur or had already occurred in the District. Dr. Thigpen further testified that Carter received a salary of $95,020, and that the only positions with similar or higher salaries were that of the chief financial officer and the superintendent. Lastly, Dr. Thig-pen stated that the RIF policy does not include any provisions pertaining to offering an employee employment in another position. Dr. Thigpen testified that Carter was a covered employee under the RIF policy.
¶ 8. Carter also testified at the hearing. Acknowledging the District’s budget constraints, Carter’s attorney stipulated as to the occurrence of a substantial reduction in the amount of funds the state allocated for the District. Carter did not offer proof that the Board erred in eliminating his position as the personnel director. In fact, Carter’s attorney explained that Carter did not contest the elimination of the entire personnel department, including Carter’s position as the director of the department. Carter’s attorney stated:
It’s not our position, Your Honor, to suggest that they should have retained the personnel department. That’s not— that’s never been our position. Our position is that they eliminated that department. They had a duty to offer him another position.
Even though Carter’s attorney argued that the District owed Carter a duty to offer him another position within the District, Carter acknowledged at the hearing that the RIF policy does not state that the District must offer him another position. Specifically, Carter testified, “Nowhere in this policy does it say that you have to offer me another position when you eliminate the department.”
¶ 9. Carter testified that he possessed the qualifications to serve as a principal, and that the District employed principals with less experience than him. However, Carter failed to offer any proof that he had any experience as a principal within the District, and he testified that his prior experiences as a principal were in Leflore County and Coahoma County. Carter also failed to offer any proof that he applied for any other positions within the District. Carter testified that upon learning of the elimination of the entire personnel department, he sought alternative employment, not for himself, but for his assistant.
¶ 10. Following the hearing, the Board rendered a final decision upholding the decision not to renew Carter’s employment contract as personnel director. Carter appealed his case to the chancery court, which entered an order finding the Board’s decision to be supported by substantial evidence, not arbitrary and capricious, and *676 not in violation of a statute or constitutional provision.
¶ 11. Carter now appeals.
STANDARD OF REVIEW
¶ 12. “When this Court reviews a decision by a chancery or circuit court concerning an agency action, it applies the same standard of review that the lower courts are bound to follow.” Webb v. S. Panola Sch. Dist., 101 So.3d 724, 727 (¶ 7) (Miss.Ct.App.2012) (citation omitted)). “Neither the appellate court nor the chancery court can ‘substitute its judgment for that of the agency or reweigh the facts of the case.’ ” Id. (citation omitted).
¶ 13. Mississippi Code Annotated section 37-9-113(3) (Rev.2007) provides the standard of review in this matter:
The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was:
(a) Not supported by any substantial evidence;
(b) Arbitrary or capricious; or
(c) In violation of some statutory or constitutional right of the employee.
DISCUSSION
I. Whether the chancery court erred by deciding that the Board’s decision was supported by substantial evidence.
II. Whether the chancery court erred in finding that the Board’s decision was not arbitrary and capricious.
II. Whether the chancery court correctly found that, as a matter of law, the RIF policy for the District was vague and ambiguous but erred in failing to find that it should be construed to require the District to offer Carter another administrative position based on his qualifications, experience, and length of service.
¶ 14. Carter argues that the chancery court erred in determining that the Board’s decision was supported by substantial evidence and not arbitrary and capricious. Carter alleges that the RIF policy is vague and ambiguous and lacked the specificity required to guide the District in its decision to eliminate an entire department. Carter contends that the Board’s decision to enforce this vague and ambiguous policy was arbitrary and capricious.
¶ 15. “The Mississippi School Employment Procedures Law was enacted in 1977 to ‘establish procedures for providing public school employees with notice of the reasons for not offering an employee a renewal of his contract.” Burks v. Amite Cnty. Sch. Dist., 708 So.2d 1366, 1369 (¶ 10) (Miss.1998) (quoting Miss.Code Ann. § 37-9-101 (1977)). The act’s purpose included the protection of “employees” from “unfair and sometimes vindictive practices of their superiors.” Id. (citation omitted). Mississippi Code Annotated section 37-9-103(l)(a) (Supp.2012) defines an “employee” as “[a]ny teacher, principal, superintendent or other professional personnel employed by the local school district for a continuous period of two (2) years with that district and required to have a valid license issued by the State Department of Education as a prerequisite of employment!;.]” Written notice of the intention to not renew an employee’s employment contract for a successive year must be provided in accordance with the requirements of Mississippi Code Annotated section 37-9-105 (Supp.2012). The written notice must *677 include the reasons for the nonrenewal of the employment contract. Id.
¶ 16. After reviewing the record, we find no abuse of discretion by the chancery court in affirming the Board’s decision not to renew Carter’s employment contract for his position as personnel director. The chancery court found that the Board based its decision on drastic budget shortfalls and a determination that other employees possessed the ability to absorb the duties of the personnel director. Thus, the chancery court determined that the Board’s decision was based upon substantial evidence, was not arbitrary or capricious, and did not violate any of Carter’s statutory or constitutional rights. See Miss.Code Ann. § 37-9-113.
¶ 17. “Substantial evidence means more than a scintilla or a suspicion.” Smith Cnty. Sch. Dist. v. Campbell, 18 So.3d 335, 338 (¶ 17) (Miss.Ct.App.2009) (citation omitted)). “The terms ‘arbitrary’ and ‘capricious’ imply ‘a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.’ ” Id. at (¶ 18) (citation omitted). We deem an act arbitrary when it occurs not according to reason or judgment, but occurs based on the will alone. Id. “If the reasons for non-renewal are a sham, or are a retaliation for the employee’s constitutionally protected activity, the Board acts arbitrarily and capriciously.” Id.
¶ 18. At the hearing, Carter’s attorney stipulated that the District faced a substantial budget shortfall and that the District had to reduce staff because of the budget constraints. In fact, Carter’s attorney acknowledged at the hearing that it was not his position that the Board should have retained the personnel department, just that the District possessed a duty to offer Carter another position. The District presented the following evidence at the hearing on this matter: Braswell testified that for the fiscal year 2010-2011, the District experienced a $1.4 million budget cut; Fuller testified that the Board made the decision to eliminate the personnel-director position due to budget constraints; Fuller testified that Dr. Thigpen, the superintendent, informed the Board of her capability of taking over the personnel director’s duties; Dr. Thigpen testified as to Carter’s salary as personnel director of $95,020 a year and that the only individuals in the District who made similar or more than the personnel director were the superintendent and the chief financial officer.
¶ 19. The Mississippi Supreme Court has “implicitly validated the use of factors such as ... financial exigencies to stand as the basis for non-renewal of teacher contracts.” Burks, 708 So.2d at 1370 (¶ 15) (citing Byrd v. Greene Cnty. Sch. Dist., 633 So.2d 1018, 1024 (Miss.1994)). The record shows that due to the budget constraints, the District was faced with a $1.4 million shortfall. In order to overcome this financial situation, the Board decided to eliminate administrative positions prior to the elimination of the instructional staff. The Board eliminated the entire personnel department after considering the budgetary savings and after determining that the job duties of the personnel director could be distributed to others within the District. Carter failed to present evidence that the Board erred in the elimination of his position as personnel director. Carter failed to apply for other administrative or instructional positions, and his qualifications to obtain some other position, relative to other applicants, was not before the Board due to his failure to apply. The issues Carter placed before the Board, and hence before the chancery court, were (1) whether the Board’s decision not to renew Carter as personnel director and to eliminate the personnel department was supported *678 by substantial evidence and was not arbitrary or capricious, and (2) whether the RIF policy required the Board to offer Carter a position in another administrative department or within the instructional staff. A review of the record shows substantial evidence supported the Board’s decision to eliminate Carter’s position as personnel director, and the plain language of the RIF policy provided no requirement to offer Carter some other administrative or instructional position.
¶20. As noted by the chancery court, Carter did not argue that his constitutional or statutory rights were violated. Instead, Carter claimed that the District possessed a duty to allow him to replace another administrator with less seniority than him or transfer him into another administrative position pursuant to the RIF policy. We find this claim lacks merit, and we acknowledge that the record reflects that the Board eliminated the entire personnel department, not just Carter’s position as personnel director. The chancery court found the RIF policy vague as to RIF procedures and as to offering new jobs to employees whose positions were eliminated pursuant to the RIF policy. We find no ambiguity in the RIF policy. The plain language of the policy provides no right to an employee to be placed in a new job position upon elimination of his or her position pursuant to the RIF policy.[1]
¶21. The District’s RIF policy provides:
The Board of Trustees has the responsibility for providing and maintaining quality schools in the district. In order to carry out this responsibility!,] the board may abolish or combine job positions, reduce the length of the work year with a concurrent/accompanying reduction in salary of employees, the same to be in no event less than 187 days per contract year, and/or reduce the number of employees. When doing so, the board will take into account the following reasons for [the] reduction in force: enrollment, educational programs, and human, material, and financial resources.
The primary objective of the board when reducing the work force will be the maintenance of a fair and balanced educational program consistent with the needs of the students and functions and responsibilities of the school district. The board will consider the following factors, not necessarily in the order listed:
1. Criticality of the position to the mission, goals, and objectives of the school district.
2. Area(s) and level(s) of competence [indicated] by certification.
3. Experience, professional training and length of service within the district and the work assignment.
4. Quality of performance including character, teaching capacity and/or executive ability.
5. Skills in areas where the district has instructional and/or supervisory needs.
Initially, staff reduction will be accomplished by attrition.
As evidenced above, nothing in the RIF policy states that when the District eliminates a position, the person who holds that position must be offered alternative employment within the District. In fact, during the hearing on the nonrenewal of his contract, when asked where in the RIF policy does it say that the District must offer him another position when it elimi *679 nated the personnel department, Carter replied: “Nowhere in this policy does it say that you have to offer me another position if you eliminate the department.” Similarly, Dr. Thigpen testified at the hearing that nothing in the RIF policy requires the District to offer a person another position upon elimination of his or her position. Furthermore, the record shows that while Carter helped his assistant get another position within the District, he failed to offer any proof that he applied for alternative employment within the District. Carter also failed to provide evidence of a past policy and practice of automatically replacing a less senior employee with a more senior employee.
¶ 22. As stated, we find no merit to Carter’s claim that the RIF policy constitutes a vague and ambiguous policy such that it should be construed to require the District to offer Carter another administrative position based on his qualifications, experience, and length of service.[2] Carter failed to demonstrate ambiguity or how the policy is susceptible to multiple, reasonable interpretations. Nothing in the RIF policy provides that when a position is eliminated, the employee must be offered another position. Even Carter admitted this in his testimony at the hearing. Also, the RIF policy only required the Board to consider the employee’s experience, qualifications, and length of service “within the district and the assignment.” Carter presented no proof that he possessed experience as a principal within the District, and the “assignment” that was being eliminated was “personnel director.” The RIF policy, by its plain language, constitutes a reduction-in-force policy, and, as such, the policy includes no provisions as to the District’s hiring procedures for the various instructional and noninstructional administrative positions.
¶ 23. Based on the foregoing, we affirm the chancery court’s decision to affirm the Board’s nonrenewal of Carter’s employment contract. We find the Board’s decision to be based upon substantial evidence, not arbitrary or capricious, nor in violation of Carter’s constitutional or statutory rights.
¶ 24. THE JUDGMENT OF THE BOLIVAR COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. This Court may affirm a decision on appeal for a different reason than it was decided by the lower court. Askew v. Askew, 699 So.2d 515, 519 n. 3 (Miss.1997).

. We make this decision in contradiction to the chancery court's finding that the RIF policy in question was “very vague and ambiguous." We agree with the chancery court, however, in its ultimate ruling that the testimony in the record provides evidence to support the nonrenewal of Carter’s contract as personnel director. See Askew, 699 So.2d at 519 n. 3.