# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CC-00972-COA

**CAROLYN PRENDERGAST**                                              **APPELLANT**

**v.**

**HARRISON COUNTY SHERIFF'S**                                        **APPELLEE**
**DEPARTMENT**

DATE OF JUDGMENT:                07/31/2020
TRIAL JUDGE:                     HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED:       HARRISON COUNTY CIRCUIT COURT,
                                 FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:         JOSEPH RICHARD TRAMUTA
                                 RUSSELL S. GILL
ATTORNEY FOR APPELLEE:           ALBEN NORRIS HOPKINS JR.
NATURE OF THE CASE:              CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                     AFFIRMED - 10/05/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., McDONALD AND EMFINGER, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     In August 2015, Troy Peterson won the election to become sheriff of the Harrison County Sheriff's Department (HCSD). After Peterson won the election, but prior to his taking office, his predecessor made Carolyn Prendergast the permanent supervisor of the Communications Division. After creating and meeting with a transition team, Peterson found that salary-equalization measures and budgetary constraints were necessary. Peterson reassigned Prendergast to the Criminal Division as an investigator, which lowered her salary. Prendergast filed a notice of appeal to the Civil Service Commission for the Harrison County Sheriff's Department (the Commission), which upheld the personnel decision of the Sheriff.

Prendergast appealed the Commission's decision to the Harrison County Circuit Court. The circuit court affirmed the Commission's findings, holding that Sheriff Peterson's actions were supported by substantial evidence and were not arbitrary or capricious. Finding no error, we affirm the circuit court's ruling.

**Statement of the Facts and Procedural History**

¶2. Peterson was elected Sheriff of Harrison County on August 27, 2015. Shortly after being elected, Peterson put together a transition team to evaluate the needs of the department. Sheriff Peterson quickly realized that several items needed to be upgraded or replaced, such as twenty patrol vehicles, inoperable surveillance systems, control systems, and fire systems. Peterson also discovered that the HCSD was the second-lowest-paid law enforcement agency out of the five agencies on the Mississippi Gulf Coast and that the HCSD had the lowest retention rate of law enforcement officers out of the five agencies on the Mississippi Gulf Coast. In order to retain state-certified and qualified employees, Sheriff Peterson made adjustments to either lower or increase the salaries depending on an employee's qualifications.

¶3. During the tenure of Peterson's predecessor, in January 2015, the HCSD had advertised the Communications Supervisor position throughout the department and to the public. The salary listed was $45,371.29 and included the following duties: managing the HCSD dispatch center; establishing shift assignments; monitoring all assigned employee's work performance; correcting equipment malfunction; compiling daily statistics of calls that

2

dispatch received; searching tapes and making copies of recordings; monitoring phone calls of operators; assisting in developing and updating the training manual, training new staff, and assisting with emergency operators; evaluating members assigned to shifts; conducting pre-scheduled tours of the Communication Center for the public; participating in sheriff's office recruitment; and performing related duties as assigned or required.

¶4.     In terms of education and experience, the job advertisement listed the following requirements: (1) five years of experience in law enforcement or law-enforcement communications; (2) the ability to read, write, and speak the English language; (3) proficiency in MS Word or WordPerfect and MS Excel spreadsheet; (4) the ability to manage people, programs, and budgets in a law enforcement agency that serves a diverse and dynamic community; and (5) the ability to independently exercise common sense and good judgment under pressure.   The job advertisement's requirements also stated that a combination of other training and experience may be considered as well as a special requirement for satisfactory completion of a personal background investigation by law enforcement.

¶5.     Prendergast, who had been working for the HCSD since March 5, 2001, applied for the position.  She began working in the HCSD as a patrol deputy but was later promoted to an investigator of child sex crimes in 2003.  Jonnine Fisher, who had been an Officer-In-Charge (OIC)[1] of the Communications Division, also applied for the position.  After a

---

[1] An OIC is an officer who serves as a shift supervisor when a higher-ranking officer, such as a lieutenant or captain, is not available.

3

competitive examination, Peterson's predecessor, Sheriff Melvin Brisolara, initially chose neither Prendergast nor Fisher for the position but chose someone outside of the HCSD. However, that individual declined the job. Subsequently, Brisolara offered Prendergast the position, which she accepted on a temporary basis,[2] beginning February 27, 2015. Prendergast's annual salary with longevity pay was $48,586.43.

¶6.    After Peterson won the election in August but prior to Brisolara leaving office, on September 11, 2015, Brisolara made Prendergast's appointment as the Communications Supervisor permanent. After meeting with his transition team and assessing the needs of the department as described above, Sheriff Peterson met with the head of every division of the HCSD, including Prendergast. Prendergast brought a list of problems regarding the Communications Division to the meeting on November 19, 2015, but before she discussed them, Sheriff Peterson informed her that she was not qualified to remain in the position of Communications Supervisor. Sheriff Peterson told Prendergast that she would be reassigned to the Criminal Investigations Division at a lower salary. As the meeting went on, the Sheriff told Prendergast that she could choose to remain in the Communications Division but in another position at a lower salary. On January 4, 2016, Prendergast was officially reassigned to the Criminal Division of the department after Sheriff Peterson took office. Her annual pay was reduced from $48,586.43 to $38,896.

---

[2] The record is silent as to why Prendergast was offered the position on a temporary basis.

¶7.     On January 12, 2016, Prendergast appealed the Sheriff's decision to the Civil Service Commission for the HCSD, an oversight body for the Sheriff's office created by local and private legislation. In her "Specific Statement of Grievance," Prendergast alleged that she faithfully executed her duties as Communications Supervisor and was demoted. Because of the demotion, Prendergast argues that her salary was reduced by over $9,000. According to Prendergast, the Sheriff's decision was based on political reasons and not made in good faith.[3] Prendergast requested back pay for her "wrongful demotion."

¶8.     The Commission held a hearing on the matter on January 25, 2017. Sheriff Peterson testified that the entire HCSD, including the Communications Division, was reorganized for budgetary purposes. Peterson stated that Harrison County was the second largest county in Mississippi, but the HCSD received the lowest pay of any sheriff's department in the state. Prendergast's counsel asked Sheriff Peterson about the retention rate of qualified and trained officers in comparison to the other departments on the Coast, to which the Sheriff responded that the HCSD had the worst retention rate. Thus, he had to adjust salaries for personnel. According to the Sheriff, he and his transition team evaluated every employee in each division of the department. After reviewing their qualifications and performances, Sheriff Peterson "equalized salaries" so that everyone would receive a fair salary according to their duties.

---

[3] In her statement, Prendergast did not detail any of the alleged political reasons or explain how the Sheriff's decision was not made in good faith.

¶9.    Sheriff Peterson stated that Prendergast's salary was not warranted given her qualifications.  Specifically, the Sheriff stated that Prendergast did not have the requisite certifications to maintain her salary or her position as Communications Supervisor.  Because Sheriff Peterson did not want to terminate any employee, he told Prendergast that he was reassigning her to the Criminal Division as an investigator.  Prendergast was one of at least twenty people within the HCSD who had adjustments in their salaries, either higher or lower depending on their positions and qualifications.  In addition, individuals in ten high-ranking positions were reassigned after their positions were dissolved.

¶10.    After Prendergast returned to the Criminal Investigations Division, Sheriff Peterson made Fisher the new Communications Supervisor.  Sheriff Peterson testified that he did so because (1) Fisher had been in communications for over twenty years; (2) Fisher had all of the certifications that the job required; and (3) the HCSD saved money by making Fisher the new supervisor.  When Fisher became the Communications Supervisor, she made $41,540.93 with longevity pay, which was $7,045.50 lower than what Prendergast had been paid.

¶11.    Prendergast testified that Sheriff Brisolara told her that she was not required to be certified.  But she later elected to obtain some basic communications training to get certified.  Additionally, Prendergast admitted that Fisher knew everything about the Communications Supervisor position.  But Prendergast said that she had heard from other employees that Fisher could not manage people and had an issue with professionalism, which was why she was not initially given the Supervisor position.  Prendergast presented no testimony or

6

documentary evidence to support this hearsay. When Prendergast became supervisor, she testified that she came across several issues, such as dispatchers working extended hours with no breaks, several employees not having up-to-date certifications, and an overall problem with the physical facility. She testified that she never voiced the problems to Sheriff Peterson because he immediately told her that she was being reassigned. Prendergast testified that six months later, she left the HCSD to take a position as a patrol officer at the Biloxi Police Department.[4] Additionally, Prendergast alleged that the Sheriff created a hostile work environment for her by interacting with everyone in her division but her.

¶12. On cross-examination, Prendergast stated that she was never certified in the communications law enforcement division. Also, she did not get basic certifications in 911 calls and radio calls until November 2015, after her meeting with Peterson, but Prendergast reiterated that Sheriff Peterson's predecessor told her that such certifications were not necessary to manage the Communications Division.

¶13. After the hearing, the Commission found that Sheriff Peterson's actions regarding Prendergast's employment were not the result of any disciplinary action but were part of salary-equalization measures. The Commission further stated that Sheriff Peterson's actions were not demonstrative of prohibited bad-faith or wrongful conduct. Therefore, the Commission found that Prendergast failed to demonstrate, by a preponderance of the

---

[4] The record does not indicate Prendergast's rate of pay at the Biloxi Police Department.

evidence, that the Sheriff acted in bad faith, without just cause, or without justification legally or factually, or that his actions were based on a prohibited religious or political reason with respect to Prendergast's employment classification or compensation level.

¶14.   On February 23, 2017, Prendergast appealed the Commission's decision to the Harrison County Circuit Court, raising the following issues: (1) that the Commission's finding was not supported by substantial evidence, was arbitrary and capricious, and violated a statutory right; (2) that the Commission deprived her of her due-process rights by allowing the Sheriff to substitute his own will instead of the results of a competitive examination; (3) that the Commission applied an erroneous legal standard; (4) that the Commission deprived her of her procedural due-process rights by refusing to pay the cost of preparing the transcript of the investigative hearing; (5) that the Commission deprived her of her constitutional due-process rights by deferring to its legal counsel to conduct the hearing, make rulings on objections and other matters, and to instruct them on the law; and (6) that she should be awarded back pay for the wrongful employment action taken against her.

¶15.   The circuit court affirmed the Commission's ruling on July 31, 2020, finding that Sheriff Peterson's decision was not arbitrary or capricious and that the administrative action was supported by substantial evidence.  Specifically, the court stated there was no evidence that supported Prendergast's claim that she was demoted.  Additionally, the court found that Prendergast was not qualified to serve as Communications Supervisor and that Fisher was the most qualified person for the position.  Furthermore, the circuit court found that the

8

Commission did not apply an erroneous legal standard nor did the Commission violate any of Prendergast's due-process rights because the Commission properly followed House Bill 1608.

¶16.    Prendergast appealed to this Court on August 28, 2020, raising the same issues from her appeal to the circuit court. After review of the record, we affirm the circuit court's order.

**Standard of Review**

¶17.    "This Court follows the same standard of review as the circuit court and evaluates whether the commission's ruling is supported by substantial evidence." *Phillips v. Hancock Cty. Sheriff's Dep't*, 203 So. 3d 622, 626 (¶21) (Miss. Ct. App. 2016). This Court will not disturb the decision of an administrative agency "unless the decision was unsupported by substantial evidence, was arbitrary or capricious, was beyond the agency's scope or powers or violated the constitutional or statutory rights of the aggrieved party." *Chavis v. Jackson Cty. Sheriff's Dep't*, 291 So. 3d 355, 358 (¶8) (Miss. Ct. App. 2019), *cert. denied*, 290 So. 3d 753 (Miss. 2019).

¶18.    "Substantial evidence" means something more than a "mere scintilla" or suspicion. *Bourgeois v. City of Bay St. Louis Civ. Serv. Comm'n*, 270 So. 3d 1039, 1045 (¶20) (Miss. Ct. App. 2018) (quoting *Pub. Empls.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (¶13) (Miss. 2000)). "We deem an act arbitrary when it occurs not according to reason or judgment, but occurs based on the will alone." *Giles v. Shaw Sch. Dist.*, 203 So. 3d 1165, 1169 (¶13) (Miss. Ct. App. 2016). Capricious means "freakish, fickle," or "done without reason, in a

9

whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Robey v. Cleveland Sch. Dist.*, 138 So. 3d 230, 234 (¶19) (Miss. Ct. App. 2014) (quoting *St. Dominic-Jackson Mem'l Hosp. v. Miss. State Dep't of Health*, 910 So. 2d 1077, 1082 (¶15) (Miss. 2005)).

**Discussion**

I. **Whether the Commission's finding that the Sheriff's actions with respect to Prendergast's employment were supported by substantial evidence and not arbitrary, capricious, or in violation of any of Prendergast's rights.**

¶19. Prendergast argues that Sheriff Peterson's decision to reassign her to a lower paying position was not supported by substantial evidence and was arbitrary, capricious, and in violation of her constitutional rights. Additionally, she argues that the Sheriff's actions were made in bad faith and amounted to wrongful conduct. Specifically, Prendergast asserts that her reassignment constituted an illegal demotion. We disagree.

¶20. According to Black's Law Dictionary, to demote is "[t]o lower [a person] in rank, position, pay, or other status." *Demote*, Black's Law Dictionary (11th ed. 2019). There are different contexts in which demotions occur. Prendergast cites Policy Number 3.08 of the HCSD's Policy and Procedure Handbook, which is a part of a progressive disciplinary action: "Demotion: The employee may be demoted to a position of a lower grade by the Sheriff. Demotion as a form of discipline is intended to be punitive and can occur concurrently with a suspension." There is no evidence in the record that Prendergast was being punished. Demotions can also occur due to reorganization in workplaces. All demotions have negative

consequences, but not all demotions are wrongful or actionable.

¶21.    Section 4(4) of House Bill 1608,[5] which created the Harrison County Civil Service

Commission to oversee the HCSD, states the following:

> It is the duty of the commission to assure that no employee of the department is disciplined for religious or political reasons, and that all employee action taken against an employee is for "good cause" and "good faith." "Good cause" and "good faith" shall be given a broad meaning that will include, but not be limited to, assuring that discipline of the department is not discriminatory or arbitrary in nature, but is fair, balanced, measured to consider the unique and individual circumstances of each matter, and is otherwise equitable for both the employee, the sheriff's department and the public.

2016 Local & Priv. Laws of Miss. ch. 946, § 4(4) (H.B. 1608).  Thus, by the virtue of the

language from House Bill 1608, Prendergast had a substantial right to continued employment

if she could prove that the Sheriff's decision was not made for "good cause" or was made in

"bad faith."[6]  Prendergast had the right to challenge the Sheriff's decision and make her case

in her appeal to the Commission, which has the duty to "oversee and approve the creation

and administration of all personnel rules, regulations and policies of the Harrison County

Sheriff's Department" and "conduct . . . hearings and examinations" on the "appointments

and promotions of officers, transfers, reinstatements, demotions, suspensions, discharges, and

---

[5] In 2016, the Mississippi Legislature enacted House Bill 1608, which specifically addresses the Civil Service Commission's powers for the HCSD.  2016 Local & Priv. Laws of Miss. ch. 946 (H.B. 1608).

[6] Policy 3.01 in the handbook provides a will-and-pleasure section for the Sheriff: "The employment of employees of Harrison County Sheriff's Department is for an indefinite term and continues at the pleasure of the Sheriff."  The Sheriff does not have unfettered discretion to take adverse personnel actions against employees.  It must be done in good faith and for good cause in accordance with House Bill 1608.

11

may also provide for any other matter connected with the general subject of personnel administration."[7] *Id*. § 4(1). Subsequently, the Commission held a hearing on Prendergast's appeal.

¶22. At the Commission hearing on Prendergast's appeal, Sheriff Peterson testified that he reassessed everything and everyone in the HCSD. He found that the HCSD had the lowest retention rate for employees and that vital equipment needed to be replaced. Because of budgetary constraints, Sheriff Peterson had to reevaluate every employee, division by division, and make hard decisions. Upon reviewing the qualifications of the personnel in the Communications Division, he found that Fisher was better qualified to serve as the Communications Supervisor and that Prendergast was better qualified to serve in the Criminal Division where she had previously worked for twelve years. Therefore, there was a good-faith reason for his reassignment of Prendergast.

¶23. Most significantly, Prendergast was not the only individual who was reassigned due to budgetary reasons. In fact, at least twenty employees were reassigned and had salary adjustments due to budgetary restraints and salary-equalization measures. This Court has affirmed a decision to make personnel decisions based on budgetary constraints. *Carter v. Cleveland Sch. Dist.*, 118 So. 3d, 673, 676 (¶23) (Miss. Ct. App. 2013). In *Carter*, we upheld a school district's decision to eliminate a position that would ultimately save the district

_____

[7] Whether Prendergast was demoted or not is not necessary to the outcome of this case because she had the right to appeal the Sheriff's decision despite which action was taken—i.e., demotion, transfer, or discharge.

money due to budgetary issues. Here, while the budget was not reduced as it was in *Carter*, the needs of the department required rebudgeting. The department saved over $7,000 by reassigning Prendergast and appointing Fisher as the Communications Supervisor. Pursuant to House Bill 1608 Section 5(5), "[t]he decision of the Sheriff shall be given deference upon any personnel action."

¶24. Additionally, Prendergast failed to establish any First Amendment violations. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "Political belief and association constitute the core of those activities protected by the First Amendment." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69 (1990). Thus, if Prendergast established that she was demoted or reassigned due to political association, she would have been protected under the First Amendment. But although Prendergast made the claim that she was demoted due to political reasons in her statement of grievance, she presented no proof to support these claims at the Commission hearing. The only argument that Prendergast made was that the Sheriff's decision was not made in good faith. Furthermore, Prendergast neither alleged nor proved any violation of any rights she had under federal law.

¶25. Moreover, Prendergast's argument that Fisher was not qualified to be the Communications Supervisor is without merit. The circuit court properly found that Fisher

13

was the most qualified person and that there was substantial evidence in the record to support this. Although Prendergast met the requirements listed on the job advertisement,[8] Fisher was more qualified for the position. Fisher had been working in the Communications Division for about twenty-five years prior to when the supervisor opening became available. She had also served as an Officer-In-Charge. At the Commission hearing, Prendergast herself admitted that Fisher knew everything about the Communications Supervisor position. Significantly, once Fisher became the Communications Supervisor, she was paid a lower salary than what Prendergast was receiving. During the Commission hearing, Sheriff Peterson presented the names of the individuals who had previously held the Communications Supervisor position since 2010. According to the Sheriff, everyone except Prendergast and Fisher who held the position had been a captain. Because neither Prendergast nor Fisher had been a captain, the annual salary was reduced once Fisher accepted the position. Sheriff Peterson testified that once Fisher was reassigned as the Communications Supervisor, the HCSD saved over $7,000. Sheriff Peterson's decision was not arbitrary because Fisher was more qualified to serve as the Communications Supervisor, and the HCSD saved money by moving Prendergast to another position.

---

[8] We note that the circuit court found that Prendergast did not have the desired number of years in law-enforcement communications. We agree with Prendergast that the circuit court incorrectly found that she needed five years of experience in law-enforcement communications. The Communications Supervisor position required more than five years of law-enforcement communications *or* law enforcement. Prendergast clearly had more than five years in law enforcement. However, this does not alter the holding in our opinion.

¶26. Prendergast has not shown that Sheriff Peterson's actions in reassigning her to another position were taken in bad faith or that there was no good cause. Rather, they were made because of department reorganization and budgetary constraints. Moreover, several other individuals were reassigned to different positions, as well as Prendergast. Therefore, the circuit court properly found that the Commission's decision was supported by substantial evidence and the decision was not arbitrary, capricious, or contrary to law.

## II. Whether the Commission applied an erroneous legal standard.

¶27. Prendergast argues that the Commission applied an erroneous legal standard when evaluating the Sheriff's employment decision. However, Prendergast failed to provide any alternative legal standard that is arguably required. Thus, this argument is without merit.

¶28. The document creating the Commission, House Bill 1608, contains the legal standard for the Commission's review in an appeal of the Sheriff's employment decisions. Section 4(4) of House Bill 1608 provides that "[i]t is the duty of the commission to assure that no employee of the department is disciplined for religious or political reasons, and that all employ[er] action taken against an employee is for 'good cause' and 'good faith.'" Further, "[g]ood cause' and 'good faith' shall be given a broad meaning that will include, but not be limited to, assuring that discipline of the department is *not discriminatory* or *arbitrary* in nature, but is fair, balanced, measured to consider the unique and individual circumstances of each matter, and is otherwise equitable for both the employee, the sheriff's department and the public." (Emphasis added). This language established the parameters and legal standard

15

of the Commission's review.

¶29.    Prendergast also argues that two cases, *Carter v. Cleveland School District*, 118 So. 3d at 673, and *Claiborne County Board of Education v. Martin*, 500 So. 2d 981 (Miss. 1986), are applicable to this case in regard to the legal standard. However, both cases are completely inapplicable in regard to the standard of review because both deal with the nonrenewals of teacher contracts, which involve a different standard of review. "A school district is not required to show 'good cause' for its decision not to renew an employee's contract; rather, the district need only provide a 'demonstrable reason' for its decision." *Jackson Pub. Sch. Dist. v. Mason*, 295 So. 3d 484, 490 (¶14) (Miss. Ct. App. 2019), *cert. denied*, 293 So. 3d 832 (Miss. 2020) (citing *Calhoun Cty. Bd. of Educ. v. Hamblin*, 360 So. 2d 1236, 1240 (Miss. 1978)). Additionally, unlike the case at hand, both cases involve a statutorily created legal standard for school districts. Further, those cases do not challenge the standard of review but only the application of the standard of review to the facts of the cases. Therefore, the legal standards in *Carter* and *Martin* are inapplicable in this case. Moreover, in *Carter*, as in this case, there was a legitimate reason to eliminate the employee's position, which included budgetary savings as well as maintaining the instructional staff for schools. *Carter*, 118 So. 3d at 677 (¶19). In *Martin*, our Supreme Court found that the school board violated Martin's constitutional rights to free speech when he was not rehired due to his past political opposition to several board members and the superintendent. *Martin*, 500 So. 2d at 986. The protected activity of the right of free speech

is not an argument in this case.

¶30. Here, applying the legal standard as set out in House Bill 1608, Sheriff Peterson made the decision to reassign Prendergast in good faith and showed good cause. The reasons for Prendergast's reassignment included budgetary constraints, the need to upgrade the patrol cars and other equipment, and the fact that Prendergast was not qualified to remain the Communications Supervisor. Therefore, the Commission had ample, substantial evidence that Sheriff Peterson's actions were taken in good faith and for good cause. After a hearing on the matter, the Commission made the finding that Sheriff Peterson did not act in bad faith, without just cause, or without justification legally, or that he acted for prohibited religious or political reasons with respect to Prendergast's employment classification or compensation level. Therefore, the circuit court properly found that the Commission did not apply the wrong legal standard.

### III. Whether the Commission deprived Prendergast of due process.

¶31. Prendergast argues that the Commission deprived her of due process when (1) Sheriff Peterson substituted his own decision instead of following the results of a competitive examination; (2) the Commission made her bear the cost of the transcript of the investigative hearing; and (3) the Commission referred to its legal counsel to conduct the hearing, make rulings on objections and other matters, and instruct others on the law. We find that these arguments are without merit.

### A. Competitive examination

17

¶32. Prendergast argues that she was deprived of her due-process rights when Sheriff Peterson made his own decision about who should be the Communications Supervisor instead of relying on the results of the competitive examination. But when Prendergast herself received the position over Fisher, there was no indication that it was the result of the competitive examination. Another individual was offered the job after the examination but turned it down. So Prendergast was offered the job after the individual had turned it down, not as the result of the examination. Prendergast presented no evidence that the Sheriff was required to fill the position on the basis of the examination. Moreover, after the new sheriff was elected and took office, his decisions on any personnel changes were given deference pursuant to House Bill 1608: "[t]he decision of the Sheriff shall be given deference upon any personnel action." Thus, this issue is without merit.

### B. Cost of preparing the transcript of the investigative hearing

¶33. Prendergast states that her due-process rights were violated when the Commission did not pay to have the hearing transcribed. Section 5(9) of House Bill 1608 states that "[t]he Harrison County Sheriff's Department may, at its option, cause the hearing to be transcribed at its own costs, or in the event of an appeal to circuit court, the cost of transcribing the hearing will be borne by the party requesting the transcript." Section 5(12) of House Bill 1608 states that "[t]he transcript of the hearing proceedings shall be at the costs of the party appealing to the circuit court." The House Bill makes it clear that Prendergast, or potentially the HCSD, bore the cost of having the Commission hearing transcribed. Prendergast

presented no other authority that requires the HCSD to bear the cost alone. Therefore, this issue is without merit.

### C. Commission Hearing

¶34. Prendergast argues that she was deprived of her due-process rights when the Commission deferred to the Commission's counsel to conduct the hearing. Prior to the hearing, the Commission's counsel advised the parties as to the roles of the Commission and the Commission's counsel. Although Prendergast's counsel objected to the Commission's counsel "running the hearing," he did not object to the Commission's obtaining the advice of counsel on any objection or any evidentiary issue:

> Well, just so the record is clear on this we don't object to the Commission obtaining the advice of counsel on any objection or any evidentiary issue. Of counsel, that's the purpose of counsel, but we object to counsel running the hearing[.]

Section 4(2) of House Bill 1608 states that "[t]he Commission shall conduct such hearings and examinations as may be necessary to enforce the provisions of the employment and personnel rules, regulations, policies and procedures promulgated by them for the Harrison County Sheriff's Department."

¶35. However, section 5(3) clearly states that "[h]earings of the commission shall be conducted generally following the Mississippi Rules of Evidence and Civil Procedure, except that no discovery under the Rules of Civil Procedure shall be allowed." This language authorizes, if not requires, the Commission to utilize someone with the knowledge of those two sets of rules to guide them. The Commission was made up of three individuals, Lester

19

Denley, Bill Magnusen, and Keith Starita, who were not attorneys. Commissioner Magnusen suggested that a motion be made that would allow the Commission's counsel to conduct the hearing from a procedural and evidentiary standpoint, as the House Bill allows. Commissioner Starita seconded the motion, and all parties voted in favor of the motion. Therefore, the Commission's impartial counsel conducted the hearing from the evidentiary and procedural standpoint in accordance with the House Bill. The Commission fully participated in the hearing, such as asking questions to seek clarification from Prendergast and the HCSD. There is nothing in the record that showed that the Commission's counsel ruled on substantive matters. The Commission's counsel, as a licensed attorney, was also able to meet the requirements of section 5(3), as he was knowledgeable in the Mississippi Rules of Evidence and Civil Procedure. Therefore, we find no error in the role that the Commission's counsel played.

¶36. Additionally, Prendergast claims prejudice because of the admission of hearsay evidence. She argues that the Commission's counsel allowed the HCSD to introduce hearsay evidence over Prendergast's objection as support for her claim that allowing counsel to officiate the hearing violated her due-process rights. The HCSD's counsel questioned Sheriff Peterson about the identities of individuals on his transition team and who opposed Prendergast's reassignment. Prendergast's counsel objected to the line of questioning, alleging that it was hearsay.[9] However, counsel for the HCSD explained that he was laying

---

[9] "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the

a foundation to explain who was helping the Sheriff make budgetary and personnel decisions. No testimony was given about what these individuals actually said or might have said. The Commission's counsel properly overruled the objection. Further, our Court has stated that merely providing names, and not anyone else's statement, during examination is not hearsay. *Bailey v. State*, 956 So. 2d 1016, 1032 (¶55) (Miss. Ct. App. 2007). Thus, it was not hearsay according to Rule 801 of the Mississippi Rules of Evidence.

¶37. Prendergast also briefly mentioned another objection made by the HCSD's counsel. During closing arguments, Prendergast's counsel mentioned Jonnine Fisher and stated that "he [(Sheriff Peterson)] just wanted to take the money and give it to somebody . . . ." The HCSD's counsel objected to arguing facts not in evidence, and the Commission's counsel told Prendergast's counsel to confine the argument to the evidence. "Arguing statements of fact which are not in evidence or [not] necessarily inferable from facts in evidence is error when those statements are prejudicial." *Jackson v. State*, 174 So. 3d 232, 237 (¶12) (Miss. 2015). Therefore, the Commission's counsel properly ruled on the matter.

¶38. Moreover, a review of the transcript does not support Prendergast's claim that her due-process rights were deprived. The Commission's counsel assisted on procedural and evidentiary matters but did not assist on any substantive matters. Thus, this issue is without merit.

## Conclusion

matter asserted in the statement." M.R.E. 801(c).

¶39. Because there was substantial evidence that supported Sheriff Peterson's reassignment of Prendergast, and because the Commission's decision is not arbitrary or capricious or contrary to law, we affirm the circuit court's order. Because we affirm the circuit court's order, Prendergast is not entitled to back pay.

¶40. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**