# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CC-00831-COA

SHARITA GILES                                                          APPELLANT

v.

SHAW SCHOOL DISTRICT                                                    APPELLEE

DATE OF JUDGMENT:            04/20/2015
TRIAL JUDGE:                 HON. JON M. BARNWELL
COURT FROM WHICH APPEALED:   BOLIVAR COUNTY CHANCERY COURT,
                             SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      JOHN M. MOONEY JR.
ATTORNEY FOR APPELLEE:       WILLIE GRIFFIN
NATURE OF THE CASE:          CIVIL - CONTRACT
TRIAL COURT DISPOSITION:     AFFIRMED NONRENEWAL OF
                             APPELLANT'S EMPLOYMENT
                             CONTRACT
DISPOSITION:                 AFFIRMED - 11/15/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., JAMES AND GREENLEE, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this appeal, we must determine whether the chancellor erred in affirming the Shaw

School District's (SSD) decision not to renew Sharita Giles's employment contract.

## PROCEDURAL HISTORY

¶2.     Giles was hired in 2008 by the SSD to serve as principal of McEvans Elementary

School located in Bolivar County, Mississippi. Her contract was renewed on a yearly basis

until February 14, 2013, when the SSD Board of Trustees (the Board) voted not to renew

Giles's contract for the 2013-14 school year. Dr. Cederick Ellis, the superintendent of SSD,

notified Giles by letter dated February 20, 2013, that her contract was not renewed due to the consistent poor performance of the school. Giles requested a hearing, which occurred over three days in April and May 2013. On July 26, 2013, the Board again voted not to renew Giles's contract. Giles appealed to the Bolivar County Chancery Court, Second Judicial District.[1]

¶3.　　The chancellor concluded that the Board had a valid reason—the low academic performance of McEvans—not to renew Giles's employment contract. Giles now appeals, asserting several similar issues that we have consolidated as follows: (1) the Board's decision was not supported by substantial evidence and was arbitrary and capricious; (2) the Board's decision not to follow Dr. Ellis's recommendation to renew her employment contract was arbitrary and capricious; and (3) she did not receive a fair and impartial hearing before the Board.

## FACTS

¶4.　　Under the Mississippi Statewide Accountability System (SAS) as implemented by the Mississippi Department of Education (MDE), schools are assigned a grade that measures its performance for the previous school year. At the time Giles began her employment as principal of McEvans in July 2008, schools were assessed a number based on a rating system known as the Quality of Distribution Index (QDI). The number, ranging from zero to three

---

[1] Giles also filed suit in federal court against SSD and several Board members raising issues related to her nonrenewal, including gender discrimination and retaliation under Title VII of the Civil Rights Act and claims under 42 U.S.C. § 1983 (2012). The United States Court of Appeals for the Fifth Circuit recently affirmed the district court's grant of summary judgment in favor of SSD. *Giles v. Shaw Sch. Dist.*, No. 15-60709, 2016 WL 3974101, at *4 (5th Cir. July 22, 2016).

hundred, represented the overall measure of student performance on statewide assessments. A school's Growth Composite Value (GCV) was also calculated based upon the degree to which a school met its expected performance during the previous school year. The breakdown of potential scores and the corresponding academic status was as follows:

- QDI below 100 = "failing" if GCV not met; "low performing" if GCV met

- QDI between 100-132 = "at risk of failing" if GCV not met; "academic watch" if GCV met

- QDI between 133-165 = "academic watch" if GCV not met; "successful" if GCV met

- QDI between 166-199 = "successful" if GCV not met; "high performing/successful" if GCV met

- QDI between 200-300 = "high performing" if GCV not met; "high performing/star school district" if GCV met

During Giles's tenure at McEvans, the school's scores were as follows:

- 2008-09 school year: QDI 94, GCV not met, ranked "failing school"

- 2009-10 school year: QDI 88, GCV not met, ranked "failing school"

- 2010-11 school year: QDI 105, GCV not met, ranked "low performing school"

- 2011-12 school year: QDI 115, GCV met, ranked "academic watch"[2]

¶5.     Since McEvans had been considered a failing school for two consecutive years (2008-09 and 2009-10), the MDE sent a team of individual evaluators to assess the school and develop a plan to increase the school's ranking to successful. An "At-Risk Action Plan" (the

_____

[2] Starting with the 2011-12 school year, schools were also given letter grades, and McEvans received a "D" for that school year. Ultimately, the use of QDI scores in assessing school performance was discontinued.

3

Plan)[3] was developed, and Giles presented it at the December 2010 Board meeting for approval. According to the Plan, McEvans's QDI for the 2011-12 school year should be over 100, and the school's QDI should increase by twenty points until reaching successful status. The Plan also included assessment goals at four and one-half weeks and nine weeks, with the QDI to be greater than 100 at each assessment and increasing between each assessment period. The records, including testimony from Dr. Ellis at the hearing, indicated that McEvans failed to reach these established benchmarks under the Plan.

¶6.    Although Dr. Ellis recommended renewing Giles's contract, the Board voted, three to two, not to renew her employment contract. The Board members who voted against renewal were Evereth Stanton, Evelyn Henry, and Georgia Ballard. Easter Sharp and Cora Jackson voted to renew Giles's contract.

¶7.    Dr. Ellis, Jackson, Ballard, Henry, and Giles testified at the hearing. Although Dr. Ellis recommended that the Board renew Giles's contract, he admitted that McEvans had never been a successful school under Giles's leadership.

¶8.    Jackson testified that she had been on the Board approximately three years and had previously voted in 2011 and 2012 in favor of renewing Giles's contract. Jackson felt that McEvans had improved during Giles's leadership, but admitted that several of the Board members were not pleased with McEvans's lack of progress.

¶9.    Ballard began her term on the Board in January 2013. She stated that she reviewed the reports from the prior years in determining whether to renew Giles's contract. Ballard

---

[3] The Plan is also referred to as the "Improvement Plan" throughout the record.

testified she was also aware of the Plan, and the school's failure to reach the required benchmarks.

¶10.    Henry testified that she had concerns about the school's lack of progress. She stated she based her vote on the data she received prior to the Board meeting. Henry had previously voted in 2011 and 2012 against renewing Giles's contract due to the school's low QDI numbers.

¶11.    Giles testified that Ballard and Henry exhibited bias or prejudice against her in the past. Prior to Ballard's term on the Board, Giles had heard Ballard say that "they need to get a new principal at McEvans." And that Henry had voted not to renew Giles's contract twice and did not support giving Giles a raise in 2012.

**STANDARD OF REVIEW**

¶12.    When this Court reviews a decision by a chancery or circuit court concerning an agency action, we apply the same standard of review that the lower courts are bound to follow. *Miss. Sierra Club Inc. v. Miss. Dep't of Envtl. Quality*, 819 So. 2d 515, 519 (¶15) (Miss. 2002). The standard of review of the chancery court in cases involving a school board's decision not to renew an employment contract is set out by Mississippi Code Annotated section 37-9-113(3) (Rev. 2013):

> The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was:
>
> (a) Not supported by any substantial evidence;
>
> (b) Arbitrary or capricious; or

(c) In violation of some statutory or constitutional right of the employee.

## DISCUSSION

### I. The Board's Decision

¶13. Giles argues that the Board's decision was not supported by substantial evidence and was arbitrary and capricious. "Substantial evidence means more than a scintilla or a suspicion." *Smith Cty. Sch. Dist. v. Campbell*, 18 So. 3d 335, 338 (¶17) (Miss. Ct. App. 2009) (citation omitted)). "The terms 'arbitrary' and 'capricious' imply a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Id*. at (¶18) (citation omitted). "We deem an act arbitrary when it occurs not according to reason or judgment, but occurs based on the will alone." *Carter v. Cleveland Sch. Dist.*, 118 So. 3d 673, 677 (¶17) (Miss. Ct. App. 2013). "If the reasons for non-renewal are a sham, or are a retaliation for the employee's constitutionally protected activity, the Board acts arbitrarily and capriciously." *Campbell*, 18 So. 3d at 338 (¶18).

¶14. "Where a board declines to rehire a school employee, it must provide a demonstrable reason for its decision. Once the board has provided a reason, the employee must, to prevail, prove that such reason is without factual basis . . . ." *Harris v. Canton Separate Pub. Sch. Bd. of Educ.*, 655 So. 2d 898, 904 (Miss. 1995) (citation omitted). In this instance, the Board produced evidence of McEvans's consistently low scores and failure to meet the benchmarks as established in the Plan. At no time during Giles's leadership was McEvans a successful school. Both Ballard's and Henry's testimonies indicate that they voted not to renew Giles's contract due to the poor performance and lack of progress of McEvans during Giles's tenure.

¶15.   Giles's contends that the school did move from failing to academic watch under her leadership. While that may be true, the Board had a valid educational reason for nonrenewal. *See* Miss. Code Ann. § 37-9-101 (Rev. 2013) ("nonrenewal decisions to be based upon valid educational reasons"). We find the Board's decision was supported by substantial evidence and neither arbitrary nor capricious.

## II.   Dr. Ellis's Recommendation

¶16.   Giles next argues that the Board's decision not to follow Dr. Ellis's recommendation to renew her contract was arbitrary and capricious. A school board may reject a superintendent's recommendation if "good reason to the contrary exists." Miss. Code Ann. § 37-9-15 (Rev. 2013). As previously stated, the Board had a valid educational reason for not renewing Giles's contract. This issue is without merit.

## III.   Fair and Impartial Hearing

¶17.   Giles claims that both Ballard and Henry were biased or prejudiced against her. As previously stated, Giles heard Ballard state that McEvans needed a new principal. According to Giles, Ballard made this statement during a meeting both had attended in 2010. Giles stated she also heard Ballard make a similar statement at another meeting both had attended in 2011. During the hearing, Ballard denied making comments about Giles. Ballard also denied advocating against Giles's renewal. Ballard testified that she had been aware of McEvan's low ratings for years and wanted to be on the Board in order to help make the school successful.

¶18.   In regard to Henry, Giles claims prejudice because Henry voted twice in the past

7

against her renewal. Giles also stated Henry had other reasons for her bias, but Giles refused to elaborate, stating "only she could share that." Henry testified that she had no personal animosity towards Giles—her chief concern was the school's poor performance.

¶19. To rebut the presumption of honesty and integrity in board members in situations such as this, Giles "must show that the board members had a personal or financial stake in the decision, or that there was some personal animosity toward" her. *Harris*, 655 So. 2d at 903. Other than her own unsupported testimony, Giles has not presented any evidence that Ballard and Henry had personal animosity towards her. This issue is without merit.

¶20. **THE JUDGMENT OF THE BOLIVAR COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**