# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00841-COA

| | |
|---|---|
| **TOBY PRICE** | **APPELLANT** |

**v.**

| | |
|---|---|
| **HINDS COUNTY SCHOOL DISTRICT** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 07/18/2024 |
| TRIAL JUDGE: | HON. TIFFANY PIAZZA GROVE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JOEL FRANK DILLARD |
| ATTORNEYS FOR APPELLEE: | MARY CLARK JOYNER ELIZABETH LEE MARON |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED, RENDERED, AND REMANDED - 01/27/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Toby Price, a licensed educator and assistant principal, read to the Gary Road Elementary School second-grade class on "Read Across America Day." Since the educator who was scheduled to read to the class did not appear on a Zoom session, Price—at the last minute—stepped in to read and selected a book entitled "I Need a New Butt!" from his personal collection.[1] The picture book was intended to be humorous and depicted a child searching for a "new butt." As such, the book contained references to and illustrations of

---

[1] "I Need a New Butt!" was written by Dawn McMillan and illustrated by Ross Kinnaird.

"butts," "butt cracks," and "farts." Following the reading, a student began repeating the word "butt" incessantly. Price was placed on administrative leave that day and fired two days later. Following a due process hearing with the school board and an appeal to the chancery court, Price's termination was upheld. Price now appeals. Finding the Board's decision was arbitrary, capricious, and lacked substantial evidence, we reverse, render, and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2. Toby Price was a licensed educator in Mississippi. Price began teaching around the year 2000 and began his administrative career in approximately 2009. Price was employed as an assistant principal of Gary Road Elementary School in Hinds County from 2018 to the date of the contained incident in 2022.

¶3. Price was tasked with securing someone to read to the second-grade class for "Read Across America Day" on March 1, 2022. Price asked a school employee from the Gary Road Intermediate School, who agreed to participate in the reading. Price "scheduled the Zoom" reading and sent the teacher a link and "all of those things for the reading[.]" The second-grade teachers joined the scheduled Zoom meeting, but the scheduled reader did not. Price reached out to her, but "she didn't respond." To resolve the problem, Price stepped in and read a book to the second-grade students in the employee's place.

¶4. Price chose to read a children's book he was familiar with from his own office, entitled "I Need a New Butt!" The illustrated book was premised on a child searching for a "new butt" after realizing his had "a crack in it." The child imagines a litany of possibilities for his "new butt," such as "a butt that's armor-plated[,]" "a bumper butt made

2

of chrome[,]" "[a] rocket butt[,]" an "arty-farty butt[,]" and "[a] robo-butt[.]"  The book concludes with the child finding his father bending over to repair a sink only to discover his father's butt also had a crack in it.  Later that day, Price was called to a meeting with the Hinds County School District's superintendent Delesicia Martin.  Martin spoke with Price and informed him that he was being placed on administrative leave in the wake of the reading.  Approximately two days later, on March 3, 2022, Price's employment was terminated.

## I.     School Board Proceedings

¶5.     Price timely challenged the termination pursuant to state law, and the Hinds County School District ("Hinds County") conducted a due process hearing on March 21 and 28, 2022.  Hinds County appointed Nathaniel Armistad as hearing officer to preside over the proceedings pursuant to state law.[2]  Neither party objected to Armistad's appointment.

¶6.     First to testify was Hinds County superintendent Delesicia Martin.  Martin received a text message from the Gary Road principal, Jenetha Lampkin, telling her that Price "had read the book to students."  Martin directed Lampkin to "speak with the teachers" and try "to get some more information about exactly what had occurred."  Martin then recounted the

---

[2]  The relevant statute states:

> The hearing may be held before the board or before a hearing officer appointed for such purpose by the board, either from among its own membership, from the staff of the school district or some other qualified and impartial person, but in no event shall the hearing officer be the staff member responsible for the initial recommendation of nonreemployment.

Miss. Code Ann. § 37-9-111(1) (Rev. 2023).

3

book in detail (and used it for demonstration) to express the school district's concerns.

¶7.     Martin then testified about a specific student with "special needs" whom Price had previously disciplined for "pulling their pants down in class."  After Price's reading, the same student reportedly knocked on an administrator's door and "was standing outside saying, 'Butt, butt, butt.'"[3]

¶8.     Martin stated that she reviewed the facts and "made the determination that Mr. Price had not acted professionally" by reading the book to the students.  Price's employment was thus terminated, specifically for violations of standards 1 and 4 of the Mississippi Educator Code of Conduct from the Mississippi Department of Education.[4]  She noted that "one of the most important things . . . when dealing with impressionable second graders" is "to be consistent[.]"  In other words, whatever was expected of the students "can't be one thing one day and something [different] the next day[,]" and the children needed to be aware that they were not permitted to pull their pants down or expose themselves.  Martin stated that by reading a book to children, "the goal is for them to learn something[.]"  Price's reading this book was "inappropriate and unprofessional on every level[,]" and the illustrations "depicting a cartoon character, child, with a naked bottom just has no place in a school setting."  Martin added that Price admitted he exercised poor judgment in his statement.

_____

[3]  The hearing officer stated that an executive session would be implemented "[i]f we're going to talk about children or if I see us going down the road of dealing with an employee's character[.]" Consequently, media presence and other persons viewing the proceedings were dismissed when references to specific students were expected.

[4]  These standards will be discussed in further detail in the analysis portion of this opinion.

¶9. Martin testified that "I Need a New Butt!" was not in the school's library and was not part of any of the school's subscription services. On cross-examination, Martin was asked a series of questions regarding other books in the school's library that contained illustrations of "naked butt[s]." Several books and excerpts from books in the school library were entered into evidence, such as "No, David!" and "David Goes to School." by David Shannon, "Chicken Butt!" by Erica S. Perl, and excerpts "Something Missing[,]" "Dancin' in the Rain[,]" and "The Planet of Mars" from poem collections written by Shel Silverstein. Price's attorney also went through "I Need a New Butt!" to ask specific questions about its contents. At the conclusion of Martin's testimony, the school district rested its case.

¶10. Price called Dr. Brian Kissel to testify as an expert witness. Kissel was a literacy professor at Vanderbilt University, had been "an educator for over 25 years[,]" and had been "a professor for the last 16 years." At the opening of the hearing, a voir dire was completed by both sides to determine whether Dr. Kissel would be qualified as an expert. Kissel was subsequently accepted as an expert witness. Accordingly, the hearing officer permitted Dr. Kissel to sit in on the proceedings and observe all other testimony. Kissel discussed his role on an "elementary steering committee," which discussed "all sorts of different issues that are happening within the nation concerning elementary education as it relates to literacy." He emphasized the importance of finding content to read aloud that "engages" students. He also emphasized the importance of utilizing humor when teaching. Kissel stated, "If I had my own second grade classroom . . . I would use ['I Need a New Butt!'] in my classroom." Price attempted to have multiple experts testify, but the hearing officer did not allow him to do so.

5

However, the hearing officer allowed Price to submit affidavits from those experts.

¶11. To begin the second day of the hearing, Price testified. He stated that he became aware of "I Need a New Butt!" from "[s]peaking with other educators" about books they and their students had enjoyed. He explained that part of the book's humor was that "the kids are in on the joke as they read it. . . . [T]hey understand what's happening and [the main character] doesn't and that's what makes it even funnier." Price clarified that the book was "obviously a cartoon." When asked what he believed the book taught children, Price answered, "[N]ot to be afraid of their body or their body parts." He described the book as simply "a fun, silly book." Price also stated that if "Dr. Martin or Ms. Lampkin were to say, 'Hey, Price, that book is not appropriate. Don't read it.' I would have said, '[Y]es ma'am, not a problem.' It would go on the shelf and never see the light of day again."

¶12. Price recalled that on the day of the reading, he "wasn't the person who was supposed to be reading." He stepped in after the scheduled reader did not appear and could not be reached. Price had a copy of "I Need a New Butt!" in his office and chose to read it to the students. Price explained his decision, stating that "the majority of the books [I had available] were nonfiction, teaching and leadership books[,]" including an "encyclopedia of superhero[e]s[,]" and a picture book from the television show "The Office," which was "not appropriate for kids." He acknowledged that he could have gone to the library to choose a book instead and that "I Need a New Butt!" was not in the school's library.

¶13. Price testified that he had read a book to students in the past that was very similar in nature. The book read at that time was a sequel entitled "I Broke My Butt!" by the same

6

author and illustrator. Price introduced a video of that reading into evidence, which was recorded during the COVID-19 pandemic and shared on "the Gary Road Facebook page[.]" The post read:

> Warning[,] today's book features use of the word butt. You may giggle uncontrollably. Please visit [Price's] YouTube channel to watch another story if you choose.[5]

Price also discussed books in the Gary Road library, which included one where a child "is running down the street in broad daylight completely naked[,]" one where a child breaks numerous school rules and opts to "do[] his own thing[,]" and another called "Chicken Butt!" that used the word "butt" approximately twenty-two times.

¶14. On cross-examination, counsel for the Hinds County school district appeared to emphasize that the other books from Gary Road's library did not contain the same material as Price's book, such as "a little boy bending over and pulling down his pants and showing his bare bottom" or an "adult male bottom[.]" The school district also alluded to dishonesty on Price's part for telling news outlets that he had never been disciplined before and for changing his stance on whether he would read the book to his students again.

¶15. Finally, Hinds County subpoenaed Amanda Stocks, an administrator from the Rankin County School District. Stocks was called to testify to rebut Price's statement made to the media that he had never been disciplined in his career. Stocks stated that her "primary duty" with the school system involved "hiring, training, retaining," and keeping records of corrective actions for employees. She stated that in 2019, when Price was employed with the

---

[5] The recording was posted by Price as he had access to the school's Facebook page.

Rankin County School District, "there was a list of concerns presented to Mr. Price about his job performance and there was conversation about him being nonrenewed." Stocks stated that he was not going to be recommended for renewal with the Rankin County School District, and Price submitted his own resignation. Several affidavits were introduced before and after the trial, largely from teachers explaining how their students reacted to the book and whether they would have read the book to students.

¶16. On April 28, 2022, the School Board of the Hinds County School District entered an order with its final decision on the matter.[6] The School Board found that the school district "has complied with its policies and procedures" and that "[g]ood cause exists to terminate Mr. Price's contract." For the latter conclusion, the order provided the following for its reasoning:

> [(1)] The Book contained pictures of child and adult nudity and inappropriate activities. . . . [(2)] Mr. Price's prior actions regarding a similar book acknowledged the problematic nature of books such as this Book. . . . [(3)] The Book had an immediate, negative impact upon a student. . . . [(4)] Mr. Price violated Standard 1 and Standard 4 of the Mississippi Code of Ethics. . . . [(5)] Mr. Price's testimony lacks credibility.

The order also noted that of the five voting School Board members, two voted in favor of termination and one voted against upholding the decision to fire Price. The remaining two board members "[a]bstained" from voting.[7]

---

[6] The order notes that the Board's decision was adopted on April 28, 2022, and the order "memorializing the decision was finalized" on May 9, 2022.

[7] "Each member of the school board present shall either vote or abstain on every question upon which a vote is taken at such meeting." *Shipman v. N. Panola Consol. Sch. Dist.*, 641 So. 2d 1106, 1116 (Miss. 1994) (quoting Miss. Code Ann. § 37-6-9). Voting "nay" was Rod Jones; those voting "yea" were Linda Laws and Carolyn Samuel; and those

8

## II. Chancery Court Proceedings

¶17. On May 26, 2022, Price filed a petition for review of the decision in the Hinds County Chancery Court. Price's brief, seeking reinstatement and back pay, was filed on October 24, 2023. Following an extension for time, Hinds County filed a responsive brief on December 1, 2023. On April 11, 2024, the chancery court conducted a hearing on Price's case. Both sides made detailed arguments in support of their respective positions. On July 18, 2024, the chancery court entered a final judgment affirming the decision of Hinds County.

¶18. On July 23, 2024, Price appealed, asking that his termination be "overturned." This Court held an oral argument on September 18, 2025. On appeal, Price raises four issues: (1) whether Hinds County successfully proved that Price's actions were a violation of generally recognized professional standards; (2) whether Hinds County deprived Price of the right to due process by giving no prior notice that "I Need a New Butt!" was a banned book; (3) whether Hinds County denied Price of a "fair and reasonable hearing" by excluding certain portions of evidence; and (4) whether Hinds County "violated statutory procedure by engaging in ex parte consultation with the hearing officer."

## STANDARD OF REVIEW

¶19. On appeal, this Court's standard of review of a decision made by an administrative body is limited. *See Langley v. Miss. State Bd. of Educ.*, 379 So. 3d 352, 363 (¶41) (Miss. Ct. App. 2023) ("Judicial review of an administrative decision is limited.") (quoting *McFadden v. Miss. State Bd. of Med. Licensure*, 735 So. 2d 145, 151 (¶20) (Miss. 1999)).

---

abstaining were Robbie Anderson and Kayla Banger.

9

This Court must review the School Board's decision employing "the same standard of review as the chancery court." *Leland Sch. Dist. v. Brown*, 342 So. 3d 508, 515-16 (¶20) (Miss. Ct. App. 2022) (quoting *Jackson Pub. Sch. Dist. v. Mason*, 295 So. 3d 484, 488-89 (¶10) (Miss. Ct. App. 2019)); *see also Aberdeen Mun. Sch. Dist. v. Blaylock*, 864 So. 2d 955, 957-58 (¶8) (Miss. Ct. App. 2003) (citing *Harris v. Canton Pub. Sch. Bd. of Educ.*, 655 So. 2d 898, 901 (Miss. 1995)) ("After review by the chancery court, the aggrieved employee may appeal to the supreme court, at which time our standard of review is the same as with the chancery court review.").

¶20.    "Thus, in substance, **this Court reviews the Board's decision**, not the ruling of the chancery court on appeal." *Leland Sch. Dist.*, 342 So. 3d at 515-16 (¶20) (quoting *Mason*, 295 So. 3d at 488-89 (¶10)).  In so doing, we "must affirm the Board's decision unless it is unlawful for the reason that it was: (a) Not supported by any substantial evidence; (b) Arbitrary or capricious; or (c) In violation of some statutory or constitutional right of the employee." *Id.* (quoting Miss. Code Ann. § 37-9-113(3) (Rev. 2019)). "Because a governing body's decision carries a presumption of validity, **the party asserting the decision's invalidity bears the burden of proof**." *City of Pascagoula v. Cumbest*, 399 So. 3d 916, 925 (¶22) (Miss. Ct. App. 2024) (emphasis added) (quoting *Waring Invs. Inc. v. City of Biloxi*, 307 So. 3d 1257, 1260 (¶5) (Miss. Ct. App. 2020)).

## ANALYSIS

¶21.    The Board's decision was detailed in its reasoning as follows: (1) the book at issue "contained pictures of child and adult nudity and inappropriate activities"; (2) Price

10

previously "acknowledged the problematic nature" of such books; (3) the book caused a "negative, immediate impact"; (4) Price violated the Mississippi Code of Ethics; and (5) Price was not a credible witness. Again, this Court can only overturn the Board's ruling upon finding it was not supported by substantial evidence, was arbitrary and capricious, was beyond the Board's powers, **or** violated Price's constitutional rights. Price does not argue that the decision was beyond the scope of the School Board's powers.

¶22. This Court notes that "[t]he superintendent of a school district may dismiss a licensed school employee for good cause." *Leland Sch. Dist.*, 342 So. 3d at 515 (¶19) (citing Miss. Code Ann. § 37-9-59 (Supp. 2014)). However, "in a hearing concerning a dismissal, **the burden is on the superintendent** to show that a principal or teacher has been dismissed for good cause." *Mason*, 295 So. 3d at 489 (¶13) (quoting *Miss. Emp. Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist.*, 437 So. 2d 388, 394 n.4 (Miss. 1983)). In other words, it is not Price's responsibility to prove that the book was appropriate for students; rather, it is Hinds County's responsibility to prove that it was inappropriate. "If there is substantial evidence supporting the [School Board]'s decision, the reviewing court must give th[e] decision substantial deference." *Case v. Pub. Emps.' Ret. Sys.*, 973 So. 2d 301, 311 (¶24) (Miss. Ct. App. 2008) (citing *Pub. Emps.' Ret. Sys. v. Cobb*, 839 So. 2d 605, 609 (¶12) (Miss. Ct. App. 2003)).

   **I.     Substantial Evidence**

¶23. "A school board's decision is supported by substantial evidence if the evidence affords a substantial basis of fact from which the fact in issue can be reasonably inferred."

*Leland Sch. Dist. v. Brown*, 342 So. 3d 508, 515-16 (¶21) (Miss. Ct. App. 2022) (internal quotation marks omitted) (quoting *Leigh v. Aberdeen Sch. Dist.*, 207 So. 3d 1276, 1281 (¶19) (Miss. Ct. App. 2016)). "[S]ubstantial evidence amounts to more than a mere scintilla of evidence, and does not rise to the level of a preponderance of the evidence." *Id.* This Court focuses heavily on the finding that Price violated established ethical standards.

¶24.    Price was alleged to have violated two professional standards in particular. Standard 1, concerning professional conduct, states that "an educator should demonstrate conduct that follows generally recognized professional standards" and, as our caselaw has summarized, "itemizes examples of 'ethical' conduct, including encouraging colleagues, participating in teacher development, maintaining competence regarding skills and knowledge, and maintaining a professional relationship with parents of students." *Langley v. Miss. State Bd. of Educ.*, 379 So. 3d 352, 355 n.1 (Miss. Ct. App. 2023) (quoting Miss. Educ. Code of Ethics, Standards of Conduct).[8] Hinds County contends that Price "read a book that promotes and

---

[8] In its entirety, Standard 1 reads:

An educator should demonstrate conduct that follows generally recognized professional standards.

1.1.    Ethical conduct includes, but is not limited to, the following:
   a.    Encouraging and supporting colleagues in developing and maintaining high standards[;]
   b.    Respecting fellow educators and participating in the development of a professional teaching environment[;]
   c.    Engaging in a variety of individual and collaborative learning experiences essential to professional development designed to promote student learning[;]
   d.    Providing professional education services in a nondiscriminatory manner[;]
   e.    Maintaining competence regarding skills, knowledge, and

encourages conduct unacceptable in a school environment."

¶25. The Code of Ethics does not provide a definition for "generally recognized professional standards." The Code contains a list of examples of unethical conduct that include, but are not limited to, "[h]arassment of colleagues[,]" "[m]isuse or mismanagement of tests or test materials[,]" "[i]nappropriate language on school grounds or any school-related activity[,]" "[p]hysical altercations[,]" and "[f]ailure to provide appropriate supervision of students and reasonable disciplinary actions." Price certainly did not engage in any of those examples of misconduct. Further, Price had no notice that reading "I Need a New Butt!" violated those "generally recognized professional standards." In fact, he drew the exact opposite conclusion because he had read a book extremely similar in nature (titled "I Broke My Butt!"), and that reading had gone off without discipline, termination, or any adverse consequences. A video recording of that reading was even posted to the official social media pages of Gary Road Elementary. If anything, that reading lends credence to Price's argument that his actions were acceptable and not in violation of any known

_____

> dispositions relating to his/her organizational position, subject matter and pedagogical practices[;]
> f.     Maintaining a professional relationship with parents of students and establish appropriate communication related to the welfare of their children.
>
> 1.2    Unethical conduct includes, but is not limited to, the following:
> a.    Harassment of colleagues[;]
> b.    Misuse or mismanagement of tests or test materials[;]
> c.    Inappropriate language on school grounds or any school-related activity[;]
> d.    Physical altercations[;]
> e.    Failure to provide appropriate supervision of students and reasonable disciplinary actions.

13

standards. Further, the school's library contained books with the word "butt" stated numerous times and poems depicting "a picture of what appears to be a man, and he's not wearing any pants[,]" "naked butt[s,]" and "[s]omething's head where their bottom should be." Also worth noting, Price had to read to students without any advance notice when the original reader failed to attend. While he acknowledged that he could have gone to the library, he simply chose a book from his office. He testified that the other books available to him in his room were not appropriate for a read-aloud. We see no substantial evidence showing that Price violated any of those "generally recognized professional standards[,]" and in particular, Standard 1.

¶26. Standard 4, the second standard Price was alleged to have violated, provides that "an educator should always maintain a professional relationship with all students, both in and outside of the classroom[.]" *Id.* at n.3.[9] Hinds County maintains that "Mr. Price failed to

---

[9] In full, Standard 4 provides:

An educator should always maintain a professional relationship with all students, both in and outside the classroom.

4.1.   Ethical conduct includes, but is not limited to, the following:
   a.   Fulfilling the roles of mentor and advocate for students in a professional relationship. A professional relationship is one where the educator maintains a position of teacher/student authority while expressing concern, empathy, and encouragement for students[;]
   b.   Nurturing the intellectual, physical, emotional, social and civic potential of all students[;]
   c.   Providing an environment that does not needlessly expose students to unnecessary embarrassment or disparagement[;]
   d.   Creating, supporting, and maintaining a challenging learning environment for all students.

14

provide an environment that did not needlessly expose students to unnecessary embarrassment." There is nothing concrete in the record demonstrating that the second-grade class was subjected to "unnecessary embarrassment." No child or group of children was singled out during the reading, and Price acknowledged the outlandish nature of the book's premise. The only evidence in the record that could be argued to provide "substantial evidence" of any "unnecessary embarrassment" was described by one teacher that one special education student repeated the word "butt" after observing the reading. No teacher, student,

---

4.2. Unethical conduct includes, but is not limited to the following:

a. Committing any act of child abuse[;]

b. Committing any act of cruelty to children or any act of child endangerment[;]

c. Committing or soliciting any unlawful sexual act[;]

d. Engaging in harassing behavior on the basis of race, gender, national origin, religion or disability[;]

e. Furnishing tobacco, alcohol, or illegal/unauthorized drugs to any student or allowing a student to consume alcohol or illegal/unauthorized drugs[;]

f. Soliciting, encouraging, participating or initiating inappropriate written, verbal, electronic, physical or romantic relationship with students.

Examples of these acts may include but not be limited to:

1. sexual jokes[;]
2. sexual remarks[;]
3. sexual kidding or teasing[;]
4. sexual innuendo[;]
5. pressure for dates or sexual favors[;]
6. inappropriate touching, fondling, kissing or grabbing[;]
7. rape[;]
8. threats of physical harm[;]
9. sexual assault[;]
10. electronic communication such as texting[;]
11. invitation to social networking[;]
12. remarks about a student's body[;]
13. consensual sex.

15

or parent of a student testified that a child was "embarrassed." In fact, no one testified that any child was "embarrassed."[10] The record simply lacks substantial evidence to prove Price violated either standard of conduct as alleged in his termination notice.

## II. Arbitrary and Capricious

¶27. "If an agency's decision is supported by substantial evidence, then it is not arbitrary or capricious." *Miss. Transp. Comm'n v. Anson*, 879 So. 2d 958, 964 (¶17) (Miss. 2004) (citing *Miss. Bureau of Narcotics v. Stacy*, 817 So. 2d 523, 526 (Miss. 2002)). As articulated above, this Court finds the Board's decision as a whole to be unsupported by substantial evidence. It follows that the decision as a whole was also arbitrary and capricious. *See Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 430 (¶35) (Miss. 2000) (citing *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So. 2d 973, 976 (Miss. 1999)).

¶28. To be sure, "[t]he terms 'arbitrary' and 'capricious' imply **a lack of understanding of or a disregard for the surrounding facts and settled controlling principles**." *Ekanem v. Greenville Pub. Sch. Dist. Bd. of Trs.*, 235 So. 3d 1431, 1433 (¶5) (Miss. Ct. App. 2017) (emphasis added) (quoting *Giles v. Shaw Sch. Dist.*, 203 So. 3d 1165, 1169 (¶12) (Miss. Ct. App. 2016)). "An act is arbitrary when it is not done according to reason or judgment, but depending on the will alone." *Leland Sch. Dist.*, 342 So. 3d at 515-16 (¶21) (quoting *Burks v. Amite Cnty. Sch. Dist.*, 708 So. 2d 1366, 1370 (¶14) (Miss. 1998)). On the other hand, an action is "capricious" if it is "done without reason, in a whimsical manner, implying either

---

[10] One teacher stated in an affidavit, "My class became very quiet while the book was read. I saw students looking at each other as though trying to determine how they should react to the book."

16

a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Id.*

¶29. With those definitions in mind, this Court finds the School Board's decision arbitrary and capricious. The school's library contained a number of books depicting "nudity" and "inappropriate activities." Several of those books were entered into evidence at the hearing and reviewed by this Court. The books included numerous mentions of the word "butt,"[11] naked children running through the street,[12] a child disobeying numerous school rules,[13] a person dancing naked in the rain,[14] a person standing in only a raincoat which exposes his butt,[15] and what appeared to be "[s]omething's head where their bottom should be."[16] There is simply no stark contrast between this book's content and the content of the others. The evidence before this Court does not support a finding that the book "I Need a New Butt!" was more severe in nature than the other books contained in the library.

¶30. Further, the school had allowed similar books—even one with the same author and illustrator as the subject book—to be read to elementary students in the past. The record reflects that Price not only read a similar book to students in the past, but that reading was streamed live, recorded, and posted on Gary Road Elementary's Facebook page. At the time

---

[11] Erica S. Perl, Chicken Butt! (2009).

[12] David Shannon, No, David! (1998).

[13] David Shannon, David Goes to School. (1999).

[14] Shel Silverstein, *Dancin' in the Rain, in* Falling Up (1996).

[15] Shel Silverstein, *Something Missing, in* A Light in the Attic (1981).

[16] Shel Silverstein, *The Planet of Mars, in* Where the Sidewalk Ends (1974).

of the hearing, the post was still on Gary Road Elementary's social media pages. In sum, the school allowed the reading of a similar book to occur without issue and allowed the content to remain available on its social media page.[17] The books in the school's library discussed "butts" and contained pictures of butts, but the school district complained in particular about "I Need a New Butt!" Price's termination was based on a book similar in nature to other books contained in the library, which leads this Court to believe the decision was indeed reached "in a whimsical manner." *See id.* In sum, the decision of the School Board demonstrates "a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Ekanem*, 235 So. 3d at 1433 (¶5) (quoting *Giles*, 203 So. 3d at 1169 (¶12)). Therefore, we conclude that the decision to uphold Price's termination lacked substantial evidence and was reached in an arbitrary and capricious manner.

### III. Constitutional Violation

¶31. Price also contends that the Board's decision violated his constitutional right to due process—specifically noting Armistad's "mere presence" in the deliberation room and "communication[s] ex parte with the Board"—as well as his First Amendment right to free speech. However, this Court will decline to address "a constitutional question . . . where the issues involved in a particular case are such that the case may be decided on other grounds." *Sinquefield v. City of Ridgeland*, 400 So. 3d 474, 480 n.9 (Miss. Ct. App. 2024) (quoting *Warner-Lambert Co. v. Potts*, 909 So. 2d 1092, 1093 (¶3) (Miss. 2005)), *cert. denied*, 398

---

[17] The similar book was by the same author, Dawn McMillan, but was the second book in the series. It was entitled "I Broke My Butt!" and was promoted as the "cheeky sequel to the international bestseller 'I Need a New Butt!'" (which is the subject of this lawsuit).

So. 3d 874 (Miss. 2025).  Indeed, "[c]ourts will not decide a constitutional question unless it is **necessary to do so in order to decide the case**." *Id.* (emphasis added) (quoting *Scott ex rel. Scott v. Flynt*, 704 So. 2d 998, 1007 (Miss. 1996)).[18]  As previously discussed, this decision is being reversed due to a lack of substantial evidence and because it was a decision that was arbitrary and capricious.  We decline to address Price's constitutional arguments.

**CONCLUSION**

¶32.    This Court finds that the termination of Price's contract was not supported by substantial evidence and was arbitrary and capricious.  Therefore, we reverse the judgments of the Hinds County Chancery Court and Hinds County School Board and render Price's employment reinstated.[19]  We remand the case to the chancery court for further proceedings consistent with this opinion, including a factual determination regarding the amount of back pay, if any.  *See Leland Sch. Dist.*, 342 So. 3d at 519 (¶¶30-31).

¶33.    **REVERSED, RENDERED, AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. EMFINGER, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

---

[18]  *See also Kron v. Van Cleave*, 339 So. 2d 559, 563 (Miss. 1976); *Broadhead v. Monaghan*, 238 Miss. 239, 117 So. 2d 881, 888 (1960).

[19]  *See S. Panola Sch. Dist. v. Rone*, 315 So. 3d 1046, 1058 (¶32) (Miss. Ct. App. 2020).