ISHEE, J.,
 

 for the Court.
 

 ¶ 1. Henry Simpson was terminated from his position as principal of the Williams-Sullivan High School by the Superintendent of Education of Holmes County. A hearing concerning his termination was held, and the hearing officer provided a report to the Holmes County School District (District). The Holmes County Board of Education (Board) issued an order finding the termination to be a “proper employment decision.” On appeal to the Holmes County Chancery Court, the chancery court affirmed the decision of the Board. Aggrieved, Simpson appeals that decision. Simpson argues that: (1) his termination was not supported by substantial evidence, and (2) his right to due process was violated. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On Friday, February 24, 2006, officials from the Mississippi Department of Education were on the campus of Williams-Sullivan in Durant, Mississippi to perform a state audit of the school. During their visit, three incidents occurred that, based on other circumstances, eventually led to Simpson’s termination as principal. The incidents included a fire in a classroom, a shooting with a pellet or BB
 
 *801
 
 gun,
 
 [1]
 
 and a fight during a black history month program.
 

 ¶ 3. The' record indicates that none of the incidents were reported to the Board until February 28, 2006, which was the following Tuesday. Simpson was present at school on the Friday that the incidents took place, but he left the next day to be with his brother who having surgery in Kentucky. He did not return until Thursday, March 2.
 

 ¶4. The fire was apparently a small blaze that started in the classroom of a teacher, George Alliston. At the initial hearing, Alliston testified that the fire somehow started while officials were in Alliston’s classroom. The fire began in a drawer, and it was thrown onto the carpet. There was minimal damage, mostly just burned carpet. Simpson testified that he did not learn about any fire at his school until he was returning from his trip to Kentucky and saw a story about it in the news.
 

 ¶ 5. Shortly after the fire, Alliston and the Department of Education officials were walking across campus when he and Ms. Basham,
 
 [2]
 
 with the Department of Education, were struck with pellets. Alliston testified that he did not see the shooter or shooters. Despite Simpson’s attorney’s attempt to bring out the fact that Alliston did not see a weapon, Alliston testified that at the time he was shot, he heard numerous sounds similar to the firing of a cap gun. At the time, Alliston and the officials were preparing for a black history month program to take place in the auditorium. Simpson was speaking at the event before numerous state dignitaries, so no one informed him about the shooting until later in the afternoon. Simpson testified that upon learning of the shooting, he tried to get in touch with the Holmes County superintendent, Stephen Bailey, or one of his subordinates, Powell Rucker or Benny Montgomery.- However, he said the superintendent was out of town, and the assistant superintendents were similarly unavailable.
 

 ¶ 6. The last incident was a fight that broke out between two students during the previously mentioned program. Simpson managed to break up the fight that occurred in the auditorium.
 

 ¶ 7. Rucker received a call on February 28, 2006, from someone at the Department of Education inquiring about the events from the prior week at Williams-Sullivan. At the time, Rucker had not heard anything about the incidents, so he and Montgomery contacted Irma Nichols, who was the assistant principal at Williams-Sullivan. Rucker testified that he was not aware of any attempt by Simpson to contact him on February 24. The superintendent also did not learn about the incidents until February 28 when Montgomery called him. After learning what had happened, Bailey could not get in touch with Simpson until two days later when Simpson returned from Kentucky.
 

 ¶ 8. Bailey sent Simpson a letter dated, March 3, 2006, informing him that he had been terminated. The grounds for termination were “[Simpson’s] failure to maintain order, ensure safety for faculty, staff and students, maintain instructional integrity and [his] failure to follow board policy and the law on reporting incidents in a timely manner at Williams-Sullivan High School.” In response, Simpson asserted
 
 *802
 
 his right to a hearing concerning his termination, which was held on April 19, 2006. The hearing officer sent a report to the District, but she did not make a ruling. After reviewing the record created at the hearing, the District determined that Simpson’s firing was a proper employment decision. Thereafter, Simpson appealed the District’s decision to the Holmes County Chancery Court, which affirmed the District’s decision. Simpson then filed the present appeal.
 

 STANDARD OF REVIEW
 

 ¶ 9. The standard of review in cases involving a chancery court’s review of a school board’s decision is provided for by statute. Miss.Code Ann. § 37-9-113(3) (Rev.2007). Section 37-9-113(3) provides that the scope of the chancery court’s review shall be limited to reviewing the record to determine if the school board’s action was unlawful because it was (1) “[n]ot supported by any substantial evidence,” (2) “[ajrbitrary or capricious, or” (3) “[i]n violation of some statutory or constitutional right of the employee.” When a party thereafter appeals the chancery court’s ruling on the school board’s decision, this Court applies the same standard of review.
 
 Amite County Sch. Dist. v. Floyd,
 
 935 So.2d 1034, 1038(¶ 5) (Miss.Ct.App.2005) (citing
 
 Harris v. Canton Separate Pub. Sch. Bd. of Educ.,
 
 655 So.2d 898, 901 (Miss.1995)).
 

 DISCUSSION
 

 I. Whether the chancery court’s order affirming the decision of the Board was supported by substantial evidence.
 

 ¶ 10. Simpson first argues that the superintendent’s decision to terminate him was not supported by substantial evidence. Simpson points out that none of the incidents were attributable to him and that he was not aware of the incidents; therefore, he could not have reported them. He concludes that his termination was unwarranted and was the result of the superintendent overreacting after a difficult school day.
 

 ¶ 11. Mississippi Code Annotated section 37-11-29(1) (Rev.2007) provides as follows:
 

 Any principal, teacher or other school employee who has knowledge of any unlawful activity which occurred on educational property or during a school related activity or which may have occurred shall report such activity to the superintendent of the school district or his designee who shall notify the appropriate law enforcement officials as required by this section.
 

 This procedure is further elaborated upon in the Holmes County School District’s Board Policy Manual, which provides that immediately following an incident, the employee shall notify the principal, the principal shall notify the superintendent or his designee, and an oral notice shall be made to law enforcement. It was the violation of these policies and laws that the Board cited as one of the reasons for Simpson’s termination.
 

 ¶ 12. Simpson claims that there was no evidence that he had any knowledge of any unlawful activity that took place, but the evidence reveals that he knew that one of his teachers and an official from the Department of Education had been shot with pellets. Simpson testified that he tried to call the superintendent’s office, but he could not reach anyone before he left on personal leave for the week. There was no evidence that he had tried to contact the authorities concerning the shooting, which the Board points out is required by statute and policy.
 

 
 *803
 
 ¶ 13. From the record before us, we find that there was substantial evidence to support the superintendent’s decision to terminate Simpson’s employment. Three incidents occurred in a single day, which were witnessed by officials of the Department of Education and visiting dignitaries. No one from Williams-Sullivan reported the shooting to the Board or to the authorities. As pointed out by the chancery court, had it not been for Basham, the superintendent and the Department of Education may not have learned about the events that took place.
 

 ¶ 14. In its opinion, the chancery court stated the following:
 

 Mr. Simpson has failed to effectively perform his duties. As principal, Mr. Simpson had the responsibility of ensuring that the high school was properly run. It was his duty to ensure that he had capable staff members in place to operate the school in his absence. He further was charged with the task of knowing what occurs on his campus. He was responsible for making sure his staff performed appropriately, either by contacting him or other authorities. Since he did none of the above, Mr. Simpson cannot assert he is absolved of responsibility for acts occurring at the high school because his subordinates failed to report to him. Mr. Simpson must accept the responsibility for his staffs failures as his own.
 

 While Simpson relies on his ignorance of the events as a defense, we agree that it was his responsibility as the principal to know what happened at his school. Simpson did not even learn about the fire in the classroom until he read about it in the newspaper the following week. We find that this issue is without merit.
 

 II. Whether Simpson was deprived of his constitutional right to due process.
 

 ¶ 15. Simpson’s other argument on appeal is that he was denied due process (1) because he was terminated for events that took place before his new contract began and (2) because the superintendent failed to conduct an adequate investigation before terminating him. He also argues that his due process allegations should be deemed admitted because the Board did not respond to the allegations before the chancery court. Accordingly, Simpson concludes that the Board’s failure to respond should have been treated as a confession of error.
 

 ¶ 16. We have long held that an appellee’s failure to file a brief is tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and the brief of the appealing party, that there was no error.
 
 Varvaris v. Perreault,
 
 813 So.2d 750, 752(¶ 5) (Miss.Ct.App.2001) (citing
 
 Dethlefs v. Beau Maison Dev. Corp.,
 
 458 So.2d 714, 717 (Miss.1984)). “Automatic reversal is not required where [the] appellee fails to file a brief.”
 
 Id.
 
 (citing
 
 N.E. v. L.H.,
 
 761 So.2d 956, 962(¶ 14) (Miss.Ct.App.2000)). In order to merit reversal, “[t]he appellant’s argument ‘should at least create enough doubt in the judiciousness of the trial court’s judgment that this Court cannot say with confidence that the case should be affirmed.’ ”
 
 Id.
 
 (citing
 
 Selman v. Selman,
 
 722 So.2d 547, 551(¶13) (Miss.1998)).
 

 ¶ 17. We do not find that Simpson’s argument casts such doubt on the chancery court’s judgment. The chancery court addressed this issue in denying relief to Simpson. It found that “the record [was] not complicated, nor of large volume, and the case was not [thoroughly] briefed by Mr. Simpson with a clear statement of fact and with apt and applicable citations
 
 *804
 
 and authorities so that the brief makes out an apparent ease of error.... ” Accordingly, the chancery court examined the record and determined that the decision of the Board should be affirmed. We find no error with this ruling.
 

 ¶ 18. Moving on to the merits of Simpson’s due process claim, Simpson points out that the Board had recently renewed his contract for another year, to begin March 1, 2006; therefore, the superintendent could not have fired him for events that took place prior to that time. The only authority Simpson cites in support of this argument is Mississippi Code Annotated section 37-9-105(a) (Rev.2007). Section 37-9-105(a) provides that, if a school district decides not to renew the contract of a principal, it must give notice of such to the principal on or before March 1.
 

 ¶ 19. Simpson confuses his situation, in which he was terminated for cause, with the nonrenewal of a contract to which section 37-9-105(a) applies. The District decided to renew Simpson’s contract; however, the District later became aware of events that it felt required Simpson’s termination. Accordingly, Simpson’s employment was terminated, so the statute providing for the nonrenewal of a contract is not applicable in this case.
 

 ¶ 20. In response to Simpson’s argument that the Board could not have fired him because it had recently granted him a contract extension, the Board cites
 
 Hoffman v. Board of Trustees, East Mississippi Junior College,
 
 567 So.2d 838, 842 (Miss.1990).
 
 Hoffman
 
 states the following:
 

 The fact that a school district tolerates sub-standard performance under circumstances such as these hardly constitutes a waiver of the district’s prerogative to rely on just cause when it exists and terminate an employment contract. The question is whether Hoffman is in substantial breach of material features of his contract, not how long this has been so, nor whether his employer has failed to act upon similar past deficiencies.
 

 Id.
 
 While
 
 Hoffman
 
 may not be directly on point, its line of reasoning is somewhat relevant to the present case. Namely, when the superintendent found out about the events of February 24, he terminated Simpson for breach of contract, notwithstanding the fact that Simpson had previously been given a contract extension. As previously noted, the Board presented substantial evidence to support Simpson’s termination; therefore, it was proper for the chancery court to affirm that employment decision. The fact that Simpson had recently been given a contract extension did not deprive the Board of its “prerogative to rely on just cause when it exists and terminate an employment contract.”
 
 Id.
 

 ¶ 21. We also see no merit to Simpson’s argument that he was denied his right to due process. When Simpson returned from his personal leave, the superintendent contacted him about the events of the prior week. Apparently unsatisfied with Simpson’s explanation, the superintendent promptly notified Simpson that his employment was terminated. The notification informed Simpson of his right to a hearing on the matter, a right which Simpson asserted. A hearing was held regarding Simpson’s termination, at which he presented witness testimony and also testified as to his account of the events. Following the Board’s decision to affirm Simpson’s termination, Simpson timely exercised his appeal to the chancery court. After the chancery court affirmed Simpson’s termination, he filed the present appeal. At each stage of the proceedings, Simpson was given the opportunity to present evidence or briefs in support of his
 
 *805
 
 arguments, and at each stage, his arguments were found to be without merit.
 

 ¶ 22. Simpson quotes the supreme court in arguing that “[administrative proceedings ‘must be conducted in a fair and impartial manner, free from any suspicion of prejudice, unfairness, fraud, or oppression.’ ”
 
 McFadden v. Miss. State Bd. of Med. Licensure,
 
 735 So.2d 145, 158(¶ 51) (Miss.1999) (quoting
 
 Miss. State Bd. of Health v. Johnson,
 
 197 Miss. 417, 427, 19 So.2d 445, 447 (1944)). However, aside from Simpson’s assertions, there is no evidence that the proceedings were plagued by “any suspicion of prejudice, unfairness, fraud, or oppression.”
 
 Id.
 

 ¶ 23. Simpson’s main complaint seems to be that the superintendent failed to conduct an adequate investigation prior to terminating him. Nevertheless, Simpson had the opportunity at his hearing to present any pertinent evidence that the superintendent did not discover in his investigation or to show any inadequacy with that investigation. The administrative hearing was Simpson’s opportunity to bring to light any flaws in the superintendent’s rationale for terminating him or in the investigation that resulted in his termination. At the hearing, Simpson presented testimony and cross-examined the Board’s witnesses. With Simpson’s testimony in the record, the Board and the chancery court still found that Simpson did not present sufficient evidence to show that his termination was unwarranted.
 

 ¶ 24. Simpson’s reliance on
 
 Grand Casino Biloxi v. Hallmark,
 
 823 So.2d 1185, 1191(¶ 26) (Miss.2002) is unwarranted because the case is distinguishable from the present one. In
 
 Hallmark,
 
 the supreme court reversed mainly because the casino had destroyed or failed to preserve evidence; therefore, the subsequent investigation was inadequate and resulted in a deprivation of Hallmark’s due process rights.
 
 Id.
 
 In the present case, there was no allegation of destruction of evidence or tampering with the evidence. While Simpson alleges in his brief that no one contacted Simpson prior to his termination, Bailey testified at the hearing that he spoke with Simpson and fired him following that conversation.
 

 ¶ 25. Ultimately, we find that Simpson was not deprived of his right to due process. He was provided notice and then given an opportunity to present his version of events to the hearing officer. Thereafter, he fully exercised his right to appeal the Board’s determination. We find that this issue is without merit.
 

 ¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF HOLMES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ„ CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . It is not specified whether the projectile was a BB or a pellet. Throughout the record and the briefs, the parties interchangeably refer to a shooting with a pellet gun or BB gun. This opinion will use the term "pellets” to refer to the projectiles that were either pellets or BBs.
 

 [2]
 

 . Ms. Basham’s first name is not included in the record.